*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PAMELA ARMISTED, Guardian of J.B.; J.B., a
minor, by Pamela Armisted, Guardian;
KATHLEEN CHAUVIN, Parent and Guardian of
Joseph Chauvin; JOSEPH CHAUVIN; JERRY
WAGNER, Brother and Guardian of Leslie
Stewart; LESLIE STEWART; HAROLD ADAMS,
Guardian of Joshua Adams; EILEEN ADAMS,
Guardian of Joshua Adams; JOSHUA ADAMS;
GARY PARKS, Guardian of Towanda Parks;
TOWANDA PARKS,
       *Plaintiffs-Appellants/Cross-Appellees*,

       *v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
       *Defendant-Appellee/Cross-Appellant.*

Nos. 09-2055/2113

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10259—Arthur J. Tarnow, District Judge.

Argued:  October 7, 2011

Decided and Filed:  April 12, 2012

Before:  MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Larry A. Smith, Southfield, Michigan, for Appellants.  James G. Gross,
GROSS & NEMETH, P.L.C., Detroit, Michigan, for Appellee.  **ON BRIEF:**  Larry A.
Smith, Southfield, Michigan, for Appellants.  James G. Gross, GROSS & NEMETH,
P.L.C., Detroit, Michigan, James F. Hewson, HEWSON & VAN HELLEMONT, P.C.,
for Appellee.

_____

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of
Tennessee, sitting by designation.

—————————————

**OPINION**

—————————————

GRIFFIN, Circuit Judge. Plaintiffs are six individuals who suffered catastrophic, traumatic brain injuries as the result of automobile accidents. They seek payment of no-fault insurance benefits for the cost of home attendant care services they have received. As plaintiffs' first-party insurer, defendant State Farm Mutual Automobile Insurance Company ("State Farm") initially paid benefits at the rates plaintiffs requested but later reduced the rates on the basis of market surveys of the cost of the services. State Farm then refused to raise the rates to the earlier level because it could not verify whether plaintiffs had received the type of care that would justify paying higher rates – plaintiffs had refused to submit documentation regarding the nature and extent of the care they were receiving. This lawsuit followed, and the matter was eventually tried to a jury, which rendered a verdict in State Farm's favor. The district court denied plaintiffs' motion for a new trial. On appeal, plaintiffs challenge that decision and the court's earlier decision to award them monetary sanctions (instead of a default judgment, as they had requested) against State Farm for its violation of discovery orders. State Farm cross-appeals the district court's decision to impose sanctions and its decision denying State Farm's request for attorney fees with respect to the claims of two plaintiffs. For the reasons stated below, we dismiss for lack of appellate jurisdiction the portions of the appeals concerning State Farm's discovery sanctions and affirm in all other respects.

I.

Plaintiffs were catastrophically injured in automobile accidents. All sustained traumatic brain injuries in the accidents and are now mentally impaired to varying degrees. After their respective accidents, plaintiffs individually sued State Farm to recover the cost of attendant care services rendered at home. Each lawsuit, except the

one involving plaintiff Jonathan Boyce, ended in settlements.[1] State Farm agreed to pay each plaintiff at certain rates for a definite period of time to cover the estimated cost of attendant care services being provided at home by, or at the direction of, family members. In some cases, State Farm obviated the requirement for the insured to submit documentation regarding the details of the home care provided.

At varying times after State Farm's obligations under the settlement agreements expired, State Farm began conducting market surveys to determine whether the rate it was continuing to pay for attendant care services was reasonable. Various third-party healthcare providers were asked how much they paid their home health aides – those who assist with an injured person's basic physical and medical needs at home – and State Farm formulated a market rate based on this information. The rate was much less than State Farm had paid during the settlement periods. Based on these surveys, State Farm reduced the amount it was paying plaintiffs and stated that it would consider raising the hourly rate if it received documentation demonstrating that a higher rate was justified based on the nature and extent of the care provided. Despite repeated requests for documentation, plaintiffs, apparently at the urging of counsel, did not provide the requested information. State Farm later suspended benefits for attendant care services with respect to some of the plaintiffs after it was unable to verify whether any such services were being provided.

Plaintiffs sued State Farm for recovery of insurance benefits under Michigan's No-Fault Insurance Act, Mich. Comp. Laws §§ 500.3101-3179. They sought payment for the cost of around-the-clock home attendant care services at the rate of $30 per hour. This rate – one that in most cases was higher than the rate State Farm had paid under the settlements – was based on the average rate charged by a "life skills trainer" or "behavioral technician," a person trained to manage the behavior of those who, because of a brain injury, lack the ability to control their own behavior. Life skills trainers charge almost twice what home health aides charge.

---

[1]Jonathan Boyce's lawsuit involved only whether State Farm was responsible for no-fault insurance coverage. The Michigan courts determined that it was and ordered it to start paying the benefits then being paid by another insurance provider.

Discovery was contentious, and the district court eventually entered an order finding that State Farm had violated discovery orders and would be sanctioned for its contumacious conduct. It denied plaintiffs' request for a default judgment as the appropriate sanction and ruled that it would impose a "substantial monetary sanction" against State Farm instead. It reserved ruling on the amount of the monetary sanction it would impose.

Following a twenty-day trial, a jury rendered a verdict for State Farm, answering "No" to the following question on the verdict forms: "Were allowable expenses incurred by or on behalf of the Plaintiff arising out of the accidental bodily injury caused by the automobile accident[?]" Plaintiffs moved for a new trial, claiming that the verdict was against the weight of the evidence. State Farm moved for attorney fees under Michigan law with respect to plaintiffs Harold and Joshua Adams, Towanda Parks, and Lester Stewart. *See* Mich. Comp. Laws § 500.3148(2). At a hearing, the district court denied plaintiffs' new-trial motion and granted in part State Farm's request for attorney fees, awarding fees only with respect to the claims of Harold and Joshua Adams.[2] It reserved determination of the amount. The court also recalled at the hearing that it had not yet set the amount of sanctions for State Farm's discovery violations and ordered further briefing from the parties on what would be appropriate.

Plaintiffs and State Farm filed timely appeals. Shortly after plaintiffs filed their appeal notice, the district court *sua sponte* stayed, pending resolution of plaintiffs' appeal, its determination of the sanction it would impose against State Farm and the amount of attorney fees it would award State Farm on the Adams claims. Plaintiffs promptly moved to set aside the stay, arguing that there was no authority for the court to stay its determination of the appropriate sanction simply because plaintiffs had appealed the merits of the case. The district court granted plaintiffs' motion and

---

[2]The Adams plaintiffs had lied under oath when asked at their deposition whether they were deriving income from any sources other than attendant care payments. Harold and Joshua Adams had been working for their family business, sometimes more than forty miles from home, while at the same time requesting benefits for around-the-clock attendant care services they claimed they received. Plaintiffs do not appeal this decision but may do so once the fee amount has been set.

announced that it would set the matter for a hearing.  As of the present time, no hearing has been noticed, and a sanction has not been imposed.

## II.

We first address our jurisdiction to hear this appeal even though no party has raised the issue. *See Bonner v. Perry*, 564 F.3d 424, 426 (6th Cir. 2009).  Our appellate jurisdiction is created by statute.  28 U.S.C. § 1291 vests the circuit courts with jurisdiction to hear appeals from "final decisions" of the district courts.  A final decision does not normally occur "until there has been a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

As we indicated above, the district court has not determined or imposed its sanction for State Farm's discovery violations.  Therefore, its decision to sanction State Farm is not yet a final order subject to appellate review under § 1291.  *See Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002); *accord Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 n.2 (4th Cir. 2007) (per curiam); *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F.3d 140, 144 n.2 (1st Cir. 2006); *Manion v. Am. Airlines, Inc.*, No. 02-7110, 2002 WL 31818922, at *1 (D.C. Cir. Dec. 12, 2002) (per curiam); *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 n.1 (11th Cir. 2000) (per curiam); *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 717-18 (8th Cir.1999) (noting agreement on the issue among the Second, Fifth, Seventh, Eighth, and Ninth Circuits); *Turnbull v. Wilcken*, 893 F.2d 256, 258 (10th Cir. 1990) (per curiam).

This rule regarding the finality of sanction orders is prudent because it avoids piecemeal appeals, one regarding the district court's decision to sanction a party and another concerning the appropriateness of the sanction imposed.  Moreover, the rule prevents appellate courts from intervening and unnecessarily second-guessing the district court before it makes its final decision.  The district court in this case might decide to impose on State Farm a monetary sanction that more than covers plaintiffs' damages

request and attorney fees.  Or it might decide to impose a lesser sanction that both sides will accept without appealing.  "Better to wait until the district judge has made up his or her mind than to intervene when things remain in flux and the district court could still reverse course and provide the very relief a complaining party might seek to achieve in an appeal." *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1292 (10th Cir. 2011). Because there is no final decision on the sanctions issue, we lack appellate jurisdiction insofar as the appeals challenge the district court's decision to sanction State Farm.  We must dismiss that portion of both appeals.  Either side may seek review of the decision once the district court sets and imposes the sanction.

Our lack of jurisdiction to review the district court's decision to sanction State Farm does not, however, prevent us from reviewing its final decision denying plaintiffs' new-trial motion and State Farm's request for attorney fees on the Parks and Stewart claims.  The lack of finality with respect to a matter that is collateral to the merits does not deprive a circuit court of jurisdiction it otherwise has to review the merits.  This rule was first articulated in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), where the Supreme Court found "it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain" and adopted "a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final." *Id.* at 200-02.  That is why the perfection of an appeal does not deprive a district court of jurisdiction to award attorney fees. *See Gnesys, Inc. v. Greene*, 437 F.3d 482, 487 n.1 (6th Cir. 2005).

In addition to attorney fees, courts have found that a decision to sanction a party for misconduct during litigation, too, is collateral to the merits for purposes of finality and appellate review.  *See* 15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3915.6, p. 347 (2d ed. 1992) ("It is not surprising that the rules of finality for sanction orders parallel the rules for attorney fee awards.  A judgment on the merits is final despite the failure to resolve pending sanction matters.").  In *Turnbull v. Wilcken*, 893 F.2d 256 (10th Cir. 1990) (per curiam), for example, the Tenth Circuit held that the district court's decision on the merits became

final and appealable once it had adjudicated the merits and entered a judgment, even though it left unresolved at the time whether it would sanction one of the parties for conduct during discovery.  *Id.* at 257.  According to the Tenth Circuit, the time to file a notice of appeal that sought review of the merits began to run upon entry of the district court's order fully resolving all substantive issues on the merits, not when the court entered its order fixing the sanction nearly eight months later.  Because the notice of appeal was filed well after entry of the order adjudicating the merits and was thus untimely as to the merits, the court dismissed the appeal "as to any issues respecting the merits of the action[,]" noting that a timely notice of appeal is "an essential prerequisite to appellate jurisdiction."  *Id.* at 257-58.  But because the notice was timely as to the order imposing sanctions, the court had jurisdiction to hear that portion of the appeal.  *Id.* at 258.  The same principles apply here – plaintiffs' notice of appeal is timely as to the merits but premature as to the sanctions, permitting review of the former, despite a lack of jurisdiction to review the latter.

In sum, because the district court has not resolved *how* it will sanction State Farm, its decision *to sanction* State Farm is not yet final, and we lack jurisdiction to review the matter.  We therefore dismiss that portion of the appeals.  But because the sanctions order is collateral to the merits, we are not deprived of jurisdiction to review the district court's denial of plaintiffs' motion for a new trial and its denial of State Farm's request for attorney fees on the Parks and Stewart claims.[3]  We consider the issues in turn.

III.

Plaintiffs contend that the district court abused its discretion in denying their motion for a new trial because the verdict was against the weight of the evidence.

---

[3]We noted at oral arguments the possibility of another jurisdictional defect:  the amended complaint is bereft of an allegation regarding the citizenship of Towanda Parks, preventing us from determining whether there is complete diversity.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).  We asked the parties to submit proof of Parks's citizenship, and they have obliged us.  We are now satisfied that we have diversity jurisdiction.

A.

In diversity cases, we apply federal procedural law in determining whether a party is entitled to a new trial. *Mich. First Credit Union v. Cumis Ins. Soc'y, Inc.*, 641 F.3d 240, 245 (6th Cir. 2011). A district court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). We have interpreted this language to mean that a new trial is warranted when "a jury has reached a 'seriously erroneous result' as evidenced by . . . the verdict being against the weight of the evidence." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). But granting a new trial on this ground is a rare occurrence – it happens only when the verdict is said to be unreasonable. *Id.* at 1048. Therefore, we will uphold the verdict if it was one which the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007). A district court's decision to deny a new-trial motion is reviewed for an abuse of discretion, which means we will reverse only if we have "a definite and firm conviction that the trial court committed a clear error of judgment." *Mich. First Credit Union*, 641 F.3d at 245-46 (quotation marks omitted).

B.

Because jurisdiction in this case is predicated on diversity, the substantive law of the forum state – here, Michigan – applies. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Under Michigan law, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." Mich. Comp. Laws § 500.3105(1). Benefits are payable without regard to fault, *id.* § 500.3105(2), but are limited to "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." *Id.* § 500.3107(1)(a). Care need not be provided by trained medical personnel. *Van Marter v. Am. Fid. Fire Ins. Co.*, 318 N.W.2d 679, 683 (Mich. Ct. App. 1982). "[F]amily members are entitled to reasonable compensation for the services they

provide at home to an injured person in need of care." *Bonkowski v. Allstate Ins. Co.*, 761 N.W.2d 784, 791 (Mich. Ct. App. 2008).

An insured has the burden to prove his or her entitlement to no-fault benefits. *U.S. Fid. Ins. & Guar. Co. v. Mich. Catastrophic Claims Ass'n*, 795 N.W.2d 101, 110 (Mich. 2009).   "To be reimbursed for an 'allowable expense' under M.C.L. § 500.3107(1)(a), a plaintiff bears the burden of proving that (1) the charge for the service was reasonable, (2) the expense was reasonably necessary and (3) the expense was incurred." *Williams v. AAA Mich.*, 646 N.W.2d 476, 480 (Mich. Ct. App. 2002).

Relevant here is the requirement that an expense be "incurred."   "Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense . . . is incurred."   Mich. Comp. Laws § 500.3110(4). "To 'incur' means '[t]o become liable or subject to, [especially] because of one's own actions.'"   *Proudfoot v. State Farm Mut. Ins. Co.*, 673 N.W.2d 739, 743 (Mich. 2003) (per curiam) (quoting *Webster's II New College Dictionary* (2001)). Family members who provide care are not required to present a formal bill in order to create an issue of fact as to whether expenses have been incurred.   *See, e.g.*, *Booth v. Auto-Owners Ins. Co.*, 569 N.W.2d 903, 905 (Mich. Ct. App. 1997) (per curiam) (reversing the grant of summary disposition to insurer granted on the ground that insured was not billed by family member for services provided, holding that "whether the plaintiff was entitled to collect the value of the services and the determination of the value are matters properly left for the jury to decide").   But as with the other elements of an insured's claim for benefits, the burden rests with the insured to demonstrate by a preponderance of the evidence that each expense was actually incurred.   And detailed documentation of the services rendered is certainly persuasive evidence on the matter.

State Farm's theory at trial was that plaintiffs could not prove that they incurred allowable expenses for attendant care services because they failed to produce documentation showing, among other things, who provided attendant care, what type of care was provided and for how long, and the qualifications of the providers.   Counsel

repeated many times at trial that in today's age one does not pay another for services unless provided with documentation showing that services have in fact been rendered. It encouraged the jury to adopt its theory and hold plaintiffs to this level of proof.[4] According to the district court, the jury's verdict is explained precisely by its adoption of this theory. At the hearing on plaintiffs' new-trial motion, the district court observed that, "given the way the case was presented to the jury, the jury relied very heavily on the failure of documentation." We defer to the district court's explanation of the jury's verdict.

Whether plaintiffs incurred expenses covered by the no-fault act was a question for the jury to decide. *See Booth*, 569 N.W.2d at 905. State Farm persuaded the jury that detailed information regarding the times and specific type of care provided constituted the necessary proof of expenses incurred in this instance, given that care was being provided at home at the direction of family members instead of at a care facility where the type and extent of care would be documented in detail. It is certainly reasonable for a jury to conclude that an insured's failure to produce at trial detailed documentation of the care it claims was provided constitutes a failure to prove that expenses for the care were actually incurred. *Cf. Moghis v. Citizens Ins. Co. of Am.*, 466 N.W.2d 290, 292 (Mich. Ct. App. 1990) (per curiam) (holding, despite testimony that roommates cared for the plaintiff, that "the extent of any aid to plaintiff was not sufficiently established to support a finding that plaintiff incurred semi-dependent care

---

[4]In its opening statement, for example, State Farm's counsel told the jury:

> So, when he's asked for the documentation – when State Farm says send us the documentation, we never get it. It never comes. You punch a clock to go to work. You punch a clock when you leave. You turn in the hours in the middle and everybody knows what you did. That's the way the world works. But not here. Not for these Plaintiffs. They don't have to prove anything. They just walk in and say this is what I want to do. I want this money for 24 hours whether I did it or not.

In its closing argument, counsel repeated this theme:

> And [plaintiffs'] counsel is right; there's no mention of documentation anywhere specifically in the No-Fault Act. But the first question you are going to be asked to look at on this form is were the benefits incurred. Were they incurred? And you are going to have to decide whether or not these things actually deserve to be paid. And how does one learn whether things deserve to be paid? It could be on the basis of documentation, documentation like doctors keep, documentation like any other professional person would keep, documentation like here's what I'm doing on this particular day, and I want to be paid $30 an hour, $720 a day for it.

by an aide in the past"). The jury here simply determined that a lack of documentation regarding the specifics of the attendant care allegedly provided fatally undermined the general testimony that care over and beyond that for which State Farm had already paid was rendered and therefore "incurred." We cannot say the verdict was unreasonable.

Plaintiffs contend that State Farm's trial theory "misstated the law in Michigan, which as State Farm admits, requires no such documentation" of the care provided, thereby rendering the jury's verdict, explainable only as an adoption of that theory, unreasonable. They cite *Buntea v. State Farm Mutual Automobile Insurance Co.*, No. 05-72399, 2007 WL 3275053 (E.D. Mich. Nov. 5, 2007), for support. There, the district court denied State Farm's motion for summary judgment on the plaintiff's no-fault claim for payment of 24-hour home attendant care. State Farm argued that the plaintiff was unable to show that she incurred expenses because she had signed no contract for such care and made no out-of-pocket payments for it. *Id.* at \*4. The court denied State Farm's motion for summary judgment, finding that, despite a lack of documentary evidence of care, there was enough evidence from which a jury could conclude that attendant care expenses had been incurred. The evidence included the plaintiff's testimony that she received care from family members, testimony from family members that they provided care, and letters from doctors prescribing the care. *Id.* at \*5.

*Buntea* is of no help to plaintiffs here. The district court there held simply that the evidence in the record – testimony and doctors letters – was sufficient *to permit* a jury to find that the plaintiff had incurred expenses for home care, not that a jury would act unreasonably if it found otherwise. *Id.* *See also Booth*, 569 N.W.2d at 905 (reversing a grant of summary disposition to an insurance provider, finding that, even though the insured never billed family members for attendant care services, a jury reasonably *could conclude*, based on testimony alone, that expenses for attendant care had been incurred).

Plaintiffs alternatively contend that the jury's verdict was nonsensical because the jury answered "No" on the verdict form to the question: "Were allowable expenses incurred by or on behalf of the Plaintiff arising out of the accidental bodily injury caused

by the automobile accident[?]"  According to plaintiffs, the answer defies the evidence because there was not even a dispute that at least some expenses had been incurred and State Farm had maintained only that benefits *over and beyond* that for which it had already paid were not incurred.  Therefore, plaintiffs argue, it was entirely unreasonable for the jury to conclude that *no* expenses had been incurred.  But that is not what the jury said in its verdict, and plaintiffs' overly literal reading of the verdict form is not well-taken.  The trial concerned only whether plaintiffs had incurred *additional* expenses not already compensated by State Farm, benefits which it *owed* to plaintiffs.  The district court's instructions made the jury's duty clear.  *See Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 65 (1st Cir. 2006) (noting that a verdict form must be reviewed together with the jury instructions to determine whether it contained any error).  The court gave the following instruction:  "If you decide no-fault benefits *are owed* to the Plaintiffs, you are instructed to award the benefits *that have not already been paid by the Defendant* as follows[.]"  (Emphases added.)  Plaintiffs' counsel emphasized this fact when he suggested to the jurors how they should complete the verdict forms, telling them to subtract from the total value of benefits it found were owed the amount the evidence showed State Farm had already paid.  Furthermore, plaintiffs, who proposed (over the objection of State Farm) the very verdict form they now challenge, offer no reason for including the first question on the form if "Yes" was the only answer the jury reasonably could have given.  By answering "No" to the question, the jury clearly agreed with State Farm that the plaintiffs failed to prove by a preponderance of the evidence that additional expenses had been incurred.  As we stated earlier, that was not an unreasonable answer.

The district court did not abuse its discretion in denying plaintiffs' motion for a new trial.

## IV.

The sole issue presented in State Farm's cross-appeal that we have jurisdiction to consider is whether the district court erred by not awarding State Farm attorney fees with respect to the claims of Parks and Stewart.

Michigan's no-fault insurance act provides that an insurer may be awarded as a sanction a "reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent . . . ." Mich. Comp. Laws § 500.3148(2). "Under both Michigan and federal law, a trial court's award of attorney fees is generally reviewed under the abuse-of-discretion standard." *Shields v. Gov't Emps. Hosp. Ass'n, Inc.*, 490 F.3d 511, 514-15 (6th Cir. 2007). Its factual findings are reviewed for clear error. *Id.* at 515; *Beach v. State Farm Mut. Auto. Ins. Co.*, 550 N.W.2d 580, 587 (Mich. Ct. App. 1996). That means we will not reverse on the basis of a factual finding unless our review of the entire evidence leaves us "with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quotation marks omitted).

State Farm contends that Parks's claim for around-the-clock attendant care at $30 per hour was based on the premise that her ex-husband, Gary Parks, was providing all of the care, which is not true because Gary's son provided care five nights per week while Gary worked a midnight shift at a nearby restaurant. Gary chose the midnight shift because it was when Towanda slept. Gary paid his son $200 per month to care for Towanda. At the time, Gary was collecting, on his ex-wife's behalf, approximately $11.34 per hour from State Farm for attendant care and case management services. According to State Farm, Gary sought reimbursement for care he was not himself providing or adequately paying his son to provide, making his claim in some respect fraudulent. State Farm makes a similar argument with respect to Lester Stewart's claim.

During the hearing on State Farm's motion, the district court ruled that State Farm was not entitled to attorney fees on the claims of Parks and Stewart. Although the district court did not expressly state that it found the claims not fraudulent under the statute, it is clear from the record that such a finding was the basis for its decision not to award fees.

We do not agree with State Farm that the district court's findings with respect to the claims of Parks and Stewart are clearly erroneous. Gary Parks rendered most of his ex-wife's attendant care, which also included planning and preparing her meals,

managing her medications, and working closely with her physical therapist. The fact that some of her nighttime care was provided by Parks's son at a lower rate than State Farm was paying does not make the claim for attendant care benefits fraudulent. State Farm's contention to the contrary ignores the fact that Gary provided his son with room and board as partial payment for providing attendant care at night. Also, because Gary worked nearby during nighttime hours, he was available to assist in providing care in the event it became necessary. He was entitled to compensation for being on-call during these times.

Jerry Wagner employed various individuals to help provide Lester Stewart with home attendant care. Wagner paid them for their services and provided room and board in his home. Although State Farm paid Wagner more than he paid the providers, Wagner managed and supervised the care being provided and was entitled to compensation for those services. *See Sharp v. Preferred Risk Mut. Ins. Co.*, 370 N.W.2d 619, 626 (Mich. Ct. App. 1985). Contrary to State Farm's assertion, the record does not irrefutably demonstrate that Wagner did not pay the caregivers for their services out of the benefits State Farm was paying. Initially, Wagner testified that he paid those working for him and also promised to pay them out of the proceeds of this lawsuit. In addition, during the time State Farm had temporarily suspended Stewart's attendant care benefits, Wagner secured a line of credit in an attempt to retain the staff of caregivers he employed. When benefits were later restored at a lower level, Wagner still tapped into the available credit to pay the staff. Such conduct is inconsistent with any assertion that Wagner was not paying the caregivers and was instead keeping the benefits for himself. The district court's findings on the matter are not clearly erroneous.

V.

For the above reasons, we dismiss for lack of jurisdiction the portion of the appeals concerning State Farm's discovery sanctions and affirm in all other respects.