**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0946n.06

**No. 13-5064**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| **DAVID DELL'AQUILA**, *et al.*, | ) | |
| | ) | **FILED** |
| **Plaintiffs-Appellants,** | ) | Nov 04, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| **vs.** | ) | |

**FILED**
Nov 04, 2013
DEBORAH S. HUNT, Clerk

DAVID DELL'AQUILA, *et al.*,          )
                                                       )
     Plaintiffs-Appellants,             )          ON APPEAL FROM THE
                                                       )          UNITED STATES DISTRICT
vs.                                                  )          COURT FOR THE MIDDLE
                                                       )          DISTRICT OF TENNESSEE
LARRY HEAD, *et al.*,                    )
                                                       )
     Defendants-Appellees.           )
_____  )

**Before: KEITH and SUTTON, Circuit Judges; and BLACK, District Judge**[*]

**TIMOTHY S. BLACK, District Judge**. Plaintiffs-Appellants David Dell'Aquila and Marita Dell'Aquila (the "Dell'Aquilas") appeal from the district court's denial of their motion for new trial or to alter or amend judgment following a trial by jury. For the reasons set forth herein, we affirm.

**I.**

The Dell'Aquilas entered into a contract to purchase approximately 1,250 acres of real property ("the property") in Tennessee from appellees Larry Head and James White, Jr. (hereinafter collectively referred to as "appellees"). A portion of the property was located in Jackson County, Tennessee, with most of the property located in Clay County, Tennessee. Under the contract, appellees promised to convey the property by warranty deed, free and clear of all encumbrances.

_____

[*] The Honorable Timothy S. Black, District Judge, United States District Court, Southern District of Ohio, sitting by designation.

Ron Taylor was hired to perform a survey of the property ("Taylor Survey"). While conducting the survey, Taylor became aware of a quitclaim deed held by Robert and Cindy Byers (the "Byers") that touched the property in both Clay County and Jackson County ("disputed property"). Upon learning of the title defect in the property, appellees filed suit against the Byers in the Chancery Court for Clay County seeking to quiet title to the disputed property. The Dell'Aquilas and appellees amended their contract to address the title defect in the disputed property and defined a cure of the defect to be a judgment in the chancery court determining that all of the property at issue in the contract, including the disputed property, belonged exclusively to appellees.

The Byers moved for summary judgment in the chancery court arguing that appellees were statutorily barred under Tenn. Code. Ann. § 28-2-110 from pursuing the quiet title action because they failed to pay taxes on the disputed property for twenty years. In support of their motion, the Byers presented evidence that seventy-four acres previously taxed to appellees' predecessors in interest were, in 1984, assessed and paid by the Byers and their predecessors in interest. The Byers did not, however, present tax maps showing that the seventy-four acres were part of the disputed property.

Following a summary judgment hearing in the chancery court, defendants compared the tax maps to the Taylor survey and determined that the Byers, rather than appellees, had paid taxes on the disputed property. Because appellees did not pay taxes on the disputed property, they concluded they were statutorily barred from bringing or succeeding in the quiet title action in chancery court by virtue of Tenn. Code Ann. § 28-2-110. As a result, appellees entered into a settlement agreement with the Byers that resulted in the Byers taking title to the Jackson County portion of the disputed

property. Subsequently, the chancellor issued a decision denying the Byers' motion for summary judgment.

The Dell'Aquilas then brought suit against appellees in the district court alleging breach of contract and constructive fraud. Following trial, a jury concluded that appellees breached the contract with the Dell'Aquilas, but that the breach was excused because appellees' performance under the contract was impossible. The jury also found in favor of appellees on the constructive fraud claim.

Following the verdict, the Dell'Aquilas filed a motion for new trial, or to alter or amend judgment. In that motion, the Dell'Aquilas challenged the reasonableness of the jury's finding that appellees' nonperformance was excused because performance was impossible. The district court denied the Dell'Aquilas' motion, and the Dell'Aquilas now appeal the district court's denial of their motion for new trial to this court.

## II.

Requests for a new trial following trial by jury are governed by FED. R. CIV. P. 59(a)(1)(A), which states that district courts may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Under this provision, district courts may grant a new trial where "a jury has reached a 'seriously erroneous result' as evidenced by . . . the verdict being against the weight of the evidence[.]" *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996); *see also Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 994-95 (6th Cir. 2012).

"A district court's decision to deny a new-trial motion is reviewed for an abuse of discretion, which means we will reverse only if we have 'a definite and firm conviction that the trial court

committed a clear error of judgment.'" *Armisted*, 675 F.3d at 995 (citing *Mich. First Credit Union v. Cumis Ins. Soc'y, Inc.*, 641 F.3d 240, 245 (6th Cir. 2011)). In reviewing a district court's decision on a motion for new trial, we must "uphold the verdict if it was one which the jury reasonably could have reached[.]" *Id.* (citing *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007)).

## III.

The Dell'Aquilas argue that the determination of whether appellees' performance was impossible should have been determined based solely on proof available at the time the appellees settled with the Byers. According to the Dell'Aquilas, when viewing only the proof available to the parties at the time appellees settled with the Byers, a reasonable jury could only conclude that appellees could have prevailed in the quiet title action and any impossibility was created solely by appellees settling with the Byers and failing to remedy the cloud on title by litigating the quiet title action through trial.

## A.

With regard to the time upon which impossibility is determined, Tennessee law[1] provides that impossibility of performance excuses a breach of contract only if "'the promised performance *was at the making of the contract, or thereafter became*, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible.'" *N. Am. Capital Corp. v. McCants*, 510 S.W.2d 901, 905 (Tenn. 1974) (emphasis added) (quoting *Hinchman v. City Water Co.*, 167 S.W.2d 986 (Tenn. 1943)). Consistent with the foregoing, the district court reviewed the verdict to determine whether the jury could

---

[1] We apply the substantive law of Tennessee, *i.e.*, the forum state, because federal jurisdiction in this case is based on diversity of the parties. *Armisted*, 675 F.3d at 995.

reasonably conclude that the contract was impossible to perform at the time the parties entered the contract. We find no error in this analysis.

**B.**

With regard to whether the weight of the evidence supported the jury's conclusion that appellees' performance under the contract was impossible, this issue turned on whether appellees and their predecessors in interest failed to pay taxes on the disputed property for a period of twenty years.

Pursuant to Tenn. Code Ann. § 28-2-109, persons paying taxes on property are "presumed prima facie to be the legal owner of such land." *See Uhlhorn v. Keltner*, 637 S.W.2d 844, 848 (Tenn. 1982) (stating that, based upon Tenn. Code. Ann. § 28-2-109, payment of taxes on a property by one party for over twenty years, "alone, creates a presumption of ownership").

Pursuant to Tenn. Code Ann. § 28-1-110(a):

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Simply put, Tenn. Code. Ann. § 28-2-110 "acts as an absolute bar to any suit 'where one claiming an interest in real property or his predecessor in title has failed to have assessed and to pay taxes on the claimed property for at least twenty continuous years.'" *Burress v. Woodward*, 665 S.W.2d 707, 709 (Tenn. 1984); *see also Alexander v. Patrick*, 656 S.W.2d 376, 377 (Tenn Ct. App. 1983)).

In the district court, the parties stipulated that the Byers and their predecessors in interest paid taxes on Parcel 13 from 1990-2010, and that appellees and their predecessors in interest did not pay any taxes on Parcel 13 from 1990-2010. Evidence presented at trial in the district court also demonstrated that Parcel 13 fell within the disputed property. Based on the foregoing, a jury could reasonably conclude that performance was impossible because appellees were barred from pursuing the quiet title action as a result of their failure, and the failure of their predecessors in interest, to pay taxes on the disputed property for a period of twenty-years. The district court did not abuse its discretion in so finding.

## C.

With regard to whether appellees created the impossibility, Tennessee courts conclude that "[a] party is not relieved of liability for his nonperformance of a contract based upon the defense of impossibility of performance where the impossibility is caused by the party's own conduct or where the impossibility is caused by developments which the party could have 'prevented or avoided or remedied by appropriate corrective measures.'" *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 724-25 (Tenn. Ct. App. 1998) (citations omitted).

Here, the Dell'Aquilas suggest that appellees created the impossibility when they failed to remedy the cloud on the title by litigating the quiet title action through trial in the chancery court. The Dell'Aquilas point to the decision of the chancellor in denying the Byers' motion for summary judgment and suggest that the chancellor's finding of disputed issues of material fact conclusively demonstrates that appellees could have prevailed at trial in the chancery court.

The chancellor's denial of the Byers's motion for summary judgment was premised on the conclusion that the Byers failed to meet their burden of affirmatively showing that the land for

which they paid taxes was "among the disputed lands." *See Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). As pointed out by appellees and the district court, the chancellor did not have the benefit of considering the tax maps when deciding the Byers's motion for summary judgment, and tax maps are generally admissible to determine "who paid taxes on a particular piece of real property." *Jack v. Dillehay*, 194 S.W.3d 441, 450 (Tenn. App. 2005) (citing *Whitworth v. Hutchison*, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986)).

Appellees reviewed the tax maps after the chancellor heard arguments on summary judgment but before the chancellor issued the decision denying the motion. Appellees' review of those maps, when read in conjunction with the Taylor survey revealed that the Byers and their predecessors in interest, and not the appellees and their predecessors in interest, paid the taxes on the disputed property. While appellees only came to this realization after the chancellor heard argument on summary judgment, the fact that neither appellees nor their predecessors in interest paid taxes on the disputed property for a period of twenty-years existed at the time the appellees contracted with the Dell'Aquilas and was always a bar to appellees proceeding in the quite title action.

Appellees' settling the quiet title case prior to trial did not create the impossibility because, as reasonably determined by the jury, appellees were barred from proceeding in that action by virtue of Tenn. Code Ann. § 28-2-110(a), and that bar existed at the time the parties entered into the contract. Accordingly, we find no error in the district court's conclusion that the jury could, based on the facts, reasonably conclude that performance was impossible at the creation of the contract.

**D.**

Finally, the Dell'Aquilas argue that the district court erred in finding that, insofar as their motion for new trial could be substantively construed as a motion for judgment as a matter of law,

such motion should be barred because they failed to move for judgment before the case was sent to the jury.

Judgment as a matter of law is appropriate where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" after "a party has been fully heard on an issue during a jury trial[.]"  FED. R. CIV. P. 50(a)(1).  When faced with Rule 50 motions in diversity cases, federal courts must apply "'the standard of review used by the courts of the state whose substantive law governs the action.'"  *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 844 (6th Cir. 2013) (citing *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006); *Betts v. Costco Wholesale Corp.,* 558 F.3d 461, 466 (6th Cir. 2009)); *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 588 (6th Cir. 2012).

Similar to the standard of review employed under the Federal Rules, Tennessee courts, in reviewing motions for directed verdict, must "'take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion when there is any doubt as to the conclusions to be drawn from the evidence.'"  *Akers v. Prime Succession of Tennessee, Inc.*, 387 S.W.3d 495, 509 (Tenn. 2012) (citation omitted); *see also Stinson v. Crye-Leike, Inc.*, 198 F. App'x 512, 514-15 (6th Cir. 2006); *White v. Burlington N. & Santa Fe. Railway Co.*, 364 F.3d 789, 794 (6th Cir. 2004).  A court of appeals reviews a denial of motions for judgment as a matter of law *de novo*.  *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006).

Here, a *de novo* review of the evidence viewed most favorably to appellees results in a conclusion that reasonable jurors could find in favor of appellees on the issue of impossibility, and that the district court did not err in so finding.  Accordingly, we need not address the district court's

alternative conclusion that the Dell'Aquilas motion, insofar as it could be construed as a motion for judgment as a matter of law, was untimely.

## IV.

For the foregoing reasons, we affirm.