RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LORIE APPLEBAUM,

                    *Plaintiff-Appellant,*

    *v.*

TARGET CORPORATION, et al.,

                   *Defendants-Appellees.*

No. 15-2198

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:11-cv-15035—Judith E. Levy, District Judge.

Decided and Filed:  August 2, 2016

Before:  SUTTON, GRIFFIN, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Mark R. Bendure, BENDURE & THOMAS, Grosse Pointe Park, Michigan, for Appellant.  Mark D. Willmarth, THE LAW OFFICE OF MARK D. WILLMARTH, Flint, Michigan, for Appellee Target.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  Cycling and gravity have an uneasy relationship, as anyone who rides eventually learns.  There are many ways, too many ways, to fall.  A slick surface, an effort to avoid a hazard, a suddenly appearing animal, and a suddenly decelerating rider all come to mind.  This lawsuit brings to the fore two other possibilities:  a defective bicycle or operator error.

While browsing in a Target store in 2009, Lorie Applebaum noticed a purple Schwinn mountain bike that reminded her of her childhood bicycle. A few days later she bought one just like it at a different Target store. Any nostalgia was fleeting. On the Fourth of July, she took the bike on an inaugural ride with a friend. Just minutes into the ride, Applebaum fell off the bike at the bottom of a hill and injured her shoulder. She sued Target, alleging it negligently sold her a brake-defective bike. Target claimed that there was nothing wrong with the bike. Over the course of a three-day trial, a jury sorted out the competing evidence, eventually rejecting Applebaum's claim that the bike caused her fall. Because she received a fair trial, because the evidence supports the verdict, and because no errors infected the verdict, we affirm.

I.

The case largely turns on whether Applebaum bought a new or a used (and unrepaired) bike. According to Applebaum, when she returned to the Target store where she first noticed the bike in February 2009, the model was sold out. An employee, she says, told her a Target store in Farmington Hills had one that had been returned because of a brake problem that would soon be repaired. A week later, Applebaum called the Farmington Hills store and spoke with Sean Bryan, who allegedly told her the bike was "perfect, all fixed." R. 107 at 144. As Bryan recounts the conversation, Applebaum did not mention a repair and asked only if his store had any of the bikes in stock. She purchased the bike later that day.

The bike spent a Michigan spring in the garage before Applebaum took it out for its first ride. Less than one-tenth of a mile into the ride, Applebaum fell off the bike and injured her left shoulder. A passerby came to Applebaum's assistance, showed her that the rear brakes had clamped down on the tire, and released the brakes so that the bike could be wheeled back to Applebaum's car.

On July 7, Applebaum returned the bike to Target and told Bryan she had been in an accident caused by a brake problem. She alleges she left the bike with Bryan, but he claims she left the store with it. One way or another, no one has seen the bike since.

After Applebaum's visit, Bryan reported the incident to Target's claims examiner, Sedgwick Claims Management Services. Sedgwick employee Katherine Kracner investigated

the complaint and found that Target had no record of a repair being made at the Farmington Hills store in February 2009.

In 2011, Applebaum filed a negligence lawsuit in state court against Target, Impact Resources Group (the company that built and repaired bicycles for Target), and National Product Services (Impact's parent company).  Target removed the case to federal court based on the diversity of the parties.  Impact and National Product Services declined to participate in the litigation, and the district court entered a default judgment against them for $50,000.  The record does not reveal whether Applebaum was able to collect against these two defendants, though they apparently have been restructured in the interim.  After a trial in which eight witnesses testified, a jury found that Target was not negligent in selling Applebaum the bike.  The district court denied her motion for a new trial.

II.

On appeal, Applebaum claims that the district court should have granted her motion for a new trial for three reasons:  (1) the evidence did not support the verdict; (2) the court mistakenly excluded certain evidence as hearsay; and (3) the court mistakenly limited the scope of an adverse inference instruction relating to the spoliation of evidence by the defendant.

*Weight of the Evidence.*  Applebaum contends that no reasonable jury could have reached this verdict, requiring a new trial.  *See Armisted v. State Farm Mut. Auto. Ins.*, 675 F.3d 989, 995 (6th Cir. 2012).  We cannot agree.

On the one hand, we must acknowledge that plenty of evidence (most of it Applebaum's testimony) supported her theory of the case.  She testified that she bought a used bike from Target, that Bryan told her it had been sent back to the store due to a malfunctioning brake, that it did not work when she first tried to slow down, and that it suddenly clamped down, sending her flying through the air "like the scene in ET" and injuring her shoulder, R. 107 at 151.  Had the jury ruled for Applebaum, this evidence would have supported the verdict.

On the other hand, Target's account of the purchase and accident suggests the bike was brand new.  Bryan testified that Applebaum never mentioned a repair when she first called about

the bike, that he had no reason to believe the bike had ever been repaired, and that he retrieved Applebaum's bike from the area where the ready-for-sale bikes were kept rather than the separate area for the repair bikes.

Applebaum herself testified, moreover, that, when she bought the bike, it had cardboard wheel inserts in place, along with a plastic bag that contained the product manuals. All of these items were entered into evidence at trial. A Target employee testified that a bike sold with these items is "brand new . . . out of the box," R. 110 at 42, and that Target did not keep extras.

Target's expert witness also attributed Applebaum's fall to operator error and claimed that the rear brakes clamped onto the tire as a result of the impact of the accident, not as the cause of it. All in all, a reasonable jury could credit this testimony and rule in favor of Target.

Applebaum challenges this conclusion on the ground that the absence of any repair records shows that Impact never repaired the bike's defective brakes. But of course another explanation for this evidentiary void exists: The absence of any such evidence confirms the absence of any defective brakes in the first place.

The rest of Applebaum's contrary evidence is just that: Applebaum's contrary statements and testimony. They include her own account of what unnamed Target representatives told her. And they include the "Guest Incident Report[]" prepared by Bryan for Sedgwick, which noted that the bike's brakes had been repaired by Impact. R. 67-4 at 3. But Bryan testified that this report was based entirely on what Applebaum told him when she returned with the bike, and that he had no personal knowledge of the bike's history. If the jury did not find Applebaum's statements credible, as it was entitled to do on this record, it had no obligation to rule for her. Applebaum is entitled only to a fair jury, not one that believes whatever she says.

It is a "rare occurrence" for this court to find that a verdict was against the weight of the evidence. *Armisted*, 675 F.3d at 995. We will not make it any less rare today.

*Hearsay.* Applebaum challenges the district court's decision to exclude an email and a letter from Impact's counsel to the Sedgwick claims examiner Kracner. Both writings state that Impact's records showed it had not performed any repairs at the Farmington Hills Target in

February 2009. Applebaum argues that both statements should have been admitted under the business records hearsay exception. Fed. R. Evid. 803(6). This exception allows a court to admit hearsay if someone familiar with the record-keeping practices of the organization testifies that the records were made around the time of the recorded event by someone with knowledge, and that making the record was a regular practice of a regularly conducted business activity. *Id.*; *see United States v. Baker*, 458 F.3d 513, 518 (6th Cir. 2006). Business records that meet these criteria may still be excluded if they were made in anticipation of litigation because the circumstances of their preparation tend to indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E); *Palmer v. Hoffman*, 318 U.S. 109, 113–14 (1943); *see also Byrd v. Alpha Alliance Ins.*, 518 F. App'x 380, 386 n.4 (6th Cir. 2013).

Applebaum did not present any evidence concerning Impact's record-keeping practices and thus never laid an adequate foundation for the admissibility of the writings. Even if Applebaum had established that these writings amounted to business records, they would be barred all the same because they were made by Impact's counsel in response to a claim for indemnification by Target. In these circumstances, Impact's repeated claims that it never repaired the bike that allegedly injured Applebaum lack the objectivity of a typical business record.

Applebaum persists that the documents should be considered Sedgwick's business records because they were included in Kracner's case file for Applebaum's claim, and that Kracner laid an adequate foundation for the records in her deposition. But Sedgwick did not make these statements, and therefore Kracner could not lay a foundation for them based on her familiarity with Sedgwick's record-keeping practices. *See* Fed. R. Evid. 803(6)(A), (C). Impact instead made the statements in response to Sedgwick's inquiries. Placing Impact's replies into a Sedgwick case file does not transform them into Sedgwick's business records. Else, base hearsay could be transformed into admissible evidence whenever organizations corresponded with each other, indeed with one click on a computer screen in some instances.

*Spoliation Adverse Inference Instruction.* When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation. *Adkins v. Wolever*, 554 F.3d

650, 651 (6th Cir. 2009) (en banc).  Because Applebaum claims she returned the bicycle and Target failed to produce it, the district court advised the jury that

> [i]f you find (1) that the bicycle had previously been returned for repair of the brakes, (2) that plaintiff turned over the bicycle to defendant, and (3) that defendant disposed of the bicycle and has not shown a reasonable excuse for doing so, you may infer that inspection of the bicycle would have shown that the brakes were not repaired by Impact.

R. 95-7.  Applebaum thinks that this instruction was incomplete.  She argues that the jury should have also been advised that "destruction of the bicycle prevented forensic examination to determine the cause of the brake locking," and that they could draw an adverse inference from Target's failure to produce sign-in sheets, work orders, and serial-number tracking records that would show the bike's repair history and past ownership.  Appellant's Br. 21.

Applebaum's proposed "forensic examination" instruction adds nothing meaningful to the given instruction, which informed the jury that they could infer that the brakes were unrepaired—and thus defective—if they found that Target unreasonably disposed of the bike.  The district court did not abuse its discretion by declining to belabor the point.

Nor did the district court err in refusing to give an adverse inference instruction for spoliation of the records Applebaum sought.  Applebaum has offered no evidence that some of these records even existed, much less that Target had control over them and destroyed them with a culpable state of mind, as she must to justify a spoliation instruction.  *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553–54 (6th Cir. 2010).  On the contrary, Bryan testified that Target never registered the serial numbers of bicycles in its computer system.  Another Target employee testified that he never issued written work orders to Impact and that he believed they kept their own books.  Target did keep vendor sign-in sheets at the Farmington Hills store, but Bryan testified that these were disposed of weekly or even daily.  What's more, Target had no notice of potential litigation until Applebaum returned to the store on July 7, 2009, at which point the sign-in sheets from February were long gone.  Target's failure to document events that might prove relevant to unforeseen litigation and to retain those records indefinitely does not amount to spoliation.

Applebaum points to the contract between Target and Impact, which allegedly required written work orders and sign-in sheets for all repairs, as evidence that Target must have had access to the records and willfully failed to produce them. But the contract does not establish that work orders were filled out in practice, or that Target had control of the records. And it certainly does not establish that Target retained work orders and sign-in sheets for months on end.

It bears adding that to the extent Applebaum sought an adverse inference instruction for spoliation of electronic information, a 2015 amendment to Civil Rule 37(e)(2) required her to show that Target had "intent" to deprive her of the information's use. A showing of negligence or even gross negligence will not do the trick. Fed. R. Civ. P. 37, 2015 Advisory Comm. Note. Applebaum would not have been able to show any degree of fault for Target's alleged destruction of records, because she cannot show that Target destroyed the records—if they even existed in the first place—after it was put on notice of litigation.

For these reasons, we affirm.