NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0237n.06

No. 20-5774

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

GLOBAL FITNESS HOLDINGS, LLC,

    Plaintiff-Appellant,

v.

NAVIGATORS MANAGEMENT COMPANY, INC., NAVIGATORS PRO, a division of Navigators Management Company, and NAVIGATORS INSURANCE COMPANY,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
May 11, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: COLE, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Global Fitness Holdings, LLC, operated a chain of fitness clubs. In 2011, the company faced a class action filed by its customers, alleging that it engaged in unfair practices when selling membership and personal-training contracts. Global Fitness sought defense from its insurer, Navigators Insurance Company,[1] but Navigators determined that the suit was excluded from Global Fitness's "claims-made" policy. Global Fitness settled the class action then sued Navigators, seeking the defense costs that it believes Navigators wrongfully withheld. The district

---

[1]Global Fitness also named affiliates of Navigators Insurance Company as defendants. For simplicity's sake, we refer to defendants collectively as "Navigators."

court granted summary judgment in the insurance company's favor. Because we agree that Navigators had no duty to defend Global Fitness, we affirm.

I.

Global Fitness operated gyms and fitness clubs under the name "Urban Active" in Ohio, Kentucky, and other states. Its business model was membership-based; to use its facilities, customers had to purchase a membership contract. Global Fitness also marketed and sold personal-training services to its members. But Global Fitness's methods for selling memberships and training services attracted criticism. In 2011, a putative class of Global Fitness members sued the company, alleging that it had misrepresented and concealed the material terms of its membership and training contracts, overcharged customer accounts for the services provided under these contracts, and made cancellation of the contracts "as difficult as possible" ("the *Gascho* litigation").

The putative *Gascho* class was comprised of all persons in Ohio who had bought a Global Fitness membership or personal-training contract on or after March 27, 2000, as well as all persons who had cancelled a Global Fitness membership or personal-training contract on or after March 27, 2000 and continued to be charged after cancellation. After several amendments to its complaint, the putative class pursued seven claims: (1) false and deceptive consumer practices, in violation of the Ohio Consumer Sales Practices Act ("OCSPA"); (2) unconscionable consumer sales practices, in violation of the OCSPA; (3) violation of the OCSPA's requirements for "prepaid entertainment contracts"; (4) violation of the Ohio Deceptive Trade Practices Act; (5) unjust enrichment; (6) conversion; and (7) breach of contract.

When the *Gascho* litigation was filed, Global Fitness sought defense from Navigators under its "claims-made" insurance policy, which required Navigators to defend Global Fitness

from certain lawsuits filed against it. Navigators reviewed the claims alleged in the *Gascho* litigation and determined that they fell within a policy exclusion that applied to any claim "in any way involving any liability under any contract or agreement." After extensive litigation, Global Fitness settled the *Gascho* claims. *See generally Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016). Global Fitness then sued Navigators in Kentucky state court, arguing that the insurance company had misinterpreted the scope of the contractual-liability exclusion and that, even if the exclusion applied, an exception to the exclusion still required Navigators to defend against the *Gascho* litigation. After Navigators removed the action to federal court, the district court held that the contractual-liability exclusion applied and granted summary judgment in favor of Navigators. Global Fitness now appeals.

II.

We review the district court's grant of summary judgment de novo, *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017), and apply Kentucky law in this diversity action, *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012). Because no facts (let alone no material facts) are disputed, this case turns on the "[i]nterpretation and construction of an insurance contract," which is a "matter of law for the court." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). "When the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced." *Ky. Ass'n of Counties All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (footnote omitted). But if terms are ambiguous, all doubt must be resolved in favor of the insured and against the insurer. *See Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992).

To decide whether Navigators had a duty to defend against the *Gascho* litigation, we must examine the interrelated parts of the insurance policy it sold to Global Fitness, specifically the policy's initial grant of coverage, an exclusion to that coverage, and an exception to that exclusion.

At the outset, it is clear that—absent exclusions—Navigators would have had a duty to defend under the policy. As part of Global Fitness's Directors and Officers Liability Coverage, ("D&O Coverage"), Navigators agreed to "pay to or on behalf of [Global Fitness] all Loss which [Global Fitness is] legally obligated to pay as a result of a Claim first made against [it] . . . for a Wrongful Act by [Global Fitness]." And in a different section of the policy, Navigators accepted the "duty to defend any Claim against any Insured covered under this Policy, even if the allegations in such Claim are groundless, false or fraudulent." Thus, at least initially, the *Gascho* litigation appears to have qualified for coverage under Global Fitness's policy.

Despite this seemingly broad grant of coverage, the policy included several exclusions, one of which is important here. Under an exclusion to the D&O Coverage, Navigators was not required to pay or defend against claims that arose from "any contract or agreement" entered into by Global Fitness:

> [Navigators] will not be liable . . . to make any payment of Loss, including Costs of Defense, in connection with any Claim made against [Global Fitness] . . . based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement; provided, however, that this exclusion will not apply to the extent [Global Fitness] would have been liable in the absence of such contract or agreement[.]

Whether this exclusion applies is the dispositive issue in this case. Global Fitness mounts two challenges to applying this exclusion.

First, it argues that the exclusion cannot apply because of a "severability of exclusions" clause, which provides that, "for the purpose of determining the applicability" of the exclusions,

"only the Wrongful Acts of any president, chief executive officer or chief financial officer of [Global Fitness] shall be imputed to the Company." Because the *Gascho* litigation only alleged wrongful acts committed by its lower-level employees, Global Fitness argues that these acts cannot be imputed to it. But to accept this argument we would have to recast the *Gascho* litigation as a vicarious-liability suit. The plaintiffs in that case did not attempt to impute any employee's wrongful acts to Global Fitness. Rather, they alleged that Global Fitness engaged in "common polic[es] and practice[s]" that harmed them by misrepresenting contractual terms, overcharging members' accounts, and avoiding cancellations. To be sure, lower-level employees allegedly *carried out* these policies and practices. But the allegations regarding these employees' acts merely support the conclusion that the company was engaged in an organized, deliberate pattern of misconduct. The *Gascho* plaintiffs alleged that Global Fitness itself harmed them—not some employee whose actions should be imputed to the company—so the "severability of exclusions" clause does not bar application of the contractual-liability exclusion.

Global Fitness's second argument against application of the contractual-liability exclusion relies on the exception that it shall not apply "to the extent [Global Fitness] would have been liable in the absence of such contract or agreement." The company contends that, because each *Gascho* claim is based on some wrongful conduct it allegedly committed independent of its contractual obligations, the *Gascho* litigation could have been filed absent the membership and personal-training contracts.

This argument ignores the breadth of the contractual-liability exclusion and the true nature of the *Gascho* claims. The exclusion is "staggeringly broad." *US HF Cellular Commc'ns, LLC, v. Scottsdale Ins. Co.*, 776 F. App'x 275, 289 (6th Cir. 2019) (applying a nearly identical exclusion). It excludes any claim that is "based upon, arising out of, relating to, directly or

indirectly resulting from or in consequence of, or in any way involving any liability under any contract or agreement." All of the *Gascho* claims fit comfortably within this broad exclusion. *See Westfield Ins. Co. v Tech Dry, Inc.,* 336 F.3d 503, 507 (6th Cir. 2003) ("[A] court should determine . . . whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy.").

The *Gascho* plaintiffs' breach-of-contract claim, by definition, falls within the exclusion. And although Ohio statutes provide the cause-of-action for the first four *Gascho* counts, they all relate to Global Fitness's contracts with its members. The "unfair and deceptive conduct" complained of in the first count consisted of Global Fitness "knowingly misrepresenting the terms and conditions of its membership contracts, personal training contracts, and contracts for other services." The second count's "unconscionable acts" included Global Fitness entering into contracts it knew were "substantially one-sided" in its favor, entering into contracts it "knew customers were unable to receive a substantial benefit from," and entering into contracts "in which consumers were being charged a price substantially in excess of the price at which similar services were being obtained by similar consumers." Count three alleged that Global Fitness "engaged in a pattern and practice of conduct prohibited by [the OSCPA]" related to its "prepaid entertainment contracts." And the fourth count alleged that Global Fitness violated the Ohio Deceptive Trade Practices Act by misrepresenting the price and standard of the services it sold under its contracts.

Finally, the two common law claims were also defined by the contracts. The plaintiffs' unjust-enrichment and conversion claims alleged that Global Fitness made deductions from its customers' accounts "without any basis in the contracts or any agreement," and that these deductions were "taken outside the terms of their contracts and/or after their contracts have been

terminated[.]"  Moreover, to be a putative *Gascho* class member, a plaintiff must have had a contract with Global Fitness.

Thus, every aspect of the *Gascho* litigation was premised on the existence of the contracts between Global Fitness and its customers.  Absent these contracts, that class action could not have been brought, which forecloses Global Fitness's reliance on the exception to the exclusion.  The contractual-liability exclusion applied to the *Gascho* litigation and therefore relieved Navigators of its duty to defend under the policy.

## III.

Because Navigators correctly concluded that the contractual-liability exclusion applied to the *Gascho* litigation, we affirm the district court's judgment.