**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0570n.06

Case No. 19-1840

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 06, 2020
DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| TODD COURSER, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> MICHIGAN HOUSE OF REPRESENTATIVES; KEVIN COTTER; TIM BOWLIN; BROCK SWARTZLE; NORM SAARI; EDWARD MCBROOM; HASSAN BEYDOUN, in their official and individual capacities, <br><br> Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN <br><br> **OPINION** |

BEFORE: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Parties often raise a large number of claims on appeal. But that does not mean that they should. Especially when, as here, Plaintiff, Todd Courser, spends more time enumerating claims than developing arguments. Despite filing an eighteen-count complaint and moving for sanctions, Courser has still failed to state any claim on which relief can be granted. We **AFFIRM**.[1]

**I.**

This court has twice already outlined the relevant facts giving rise to this case in *Courser v. Allard,* 969 F.3d 604 (6th Cir. 2020) and *Gamrat v. McBroom*, No. 19-2364, 2020 WL 4346677

---

[1] We note for clarification that nearly every one of Courser's claims fails for multiple reasons. The fact that we may only mention one or two reasons does not mean that additional reasons for dismissal would not be warranted.

(6th Cir. 2020). We briefly explain for a third time the facts prompting this lawsuit, since Defendants here are different from the other cases. Given the posture of this appeal, we recite the facts as they are stated in the complaint, without evaluating their truth. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016).

Courser is a lawyer and former member of the Michigan House of Representatives. Keith Allard, Josh Cline, and Benjamin Graham all helped with Courser's successful 2014 campaign. The House then hired these three men in January 2015 and assigned them to work jointly for Courser and Representative Cindy Gamrat. Courser and Gamrat had chosen to follow a joint-staffing arrangement. The two were also engaged in an extramarital, sexual relationship when their roles as representatives began in 2015.

At that time, the Speaker of the House was Defendant Kevin Cotter. He made Republican members sign a Caucus Pledge. This pledge, which Cotter asked Courser to sign the day after Courser's swearing in, required signers to pledge to "[s]tand together with [the] caucus on difficult votes and issues" and if unable to do so, the signer should "inform the [House] Whip personally." (R. 33-9, PageID 1385.) Courser refused to sign the pledge. His complaint seems to imply that the alleged conspiracy to get him out of office resulted, at least in part, because of this refusal.

Around the same time, Allard, Cline, and Graham met with Defendants Norm Saari (Cotter's Chief of Staff) and Brock Swartzle (Cotter's Chief of Staff/House General Counsel)[2] about Courser. Saari and Swartzle wanted the three men to gather information on Courser. So the trio began surveilling Courser and giving Saari and Swartzle reports. Courser says this was "to injure and erode [his] credibility and effectiveness as a State Representative, and to force his vote according to COTTER's wishes." (R.33, PID405.)

---

[2] Courser calls Swartzle Cotter's General Counsel, but his exhibits note that Swartzle was the House's General Counsel.

Dozens of pages in the complaint detail the collected recordings and surveillance information that the three men gathered. The surveillants bugged rooms, listened to Courser and Gamrat's intimate encounters, and followed them while driving, to list a few examples. They gained access to Courser's passwords and looked at his private emails. Graham also recorded at least one conversation he had with Courser. The men worked with Joe Gamrat, Cindy Gamrat's now ex-husband, and two others whom Courser only identifies by name (without description) in the complaint: David Horr and Vincent Krell.

But the most relevant activity occurred on May 19, 2015. Courser had been receiving extortive texts on his phone, insisting that he step down as a representative, or else the sender would release "specific information" about his "private life" to the public. (*Id.* at 439.) On the evening of May 19, Courser asked Graham to send a coverup email that would act as a "controlled burn" to "inoculate the herd." *Allard*, 696 F.3d at 613. By sending such an email, Courser seemed to hope that the real story about his and Gamrat's affair would get lost in the shuffle. *Id.* Graham recorded this conversation, and he and Allard sent it to *The Detroit News*, which published a story about the recording on August 7, 2015.

Right after the article came out, Cotter directed Defendant Tim Bowlin, the Business Director and Chief Financial Officer for the House, to investigate and prepare a report about Courser and Gamrat's alleged misuse of taxpayer funds. Courser says that at the end of August, Cotter, Bowlin, Swartzle, Saari, and Defendant Hassan Beydoun, the House Majority Legal Counsel, issued a "Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat." (R. 33, PID 451.) Soon after, the House adopted a resolution to form a Select Committee to look into Courser and Gamrat's fitness for office. Cotter

3

picked six committee members: four Republicans and two Democrats. Defendant and Representative Edward McBroom chaired the committee.

Before the committee meeting, Courser met with Swartzle and Beydoun who told him that he would only be censured, and not expelled, if he participated in the committee hearing. On September 8, 2015, the Select Committee hearings began. Courser says Cotter's Caucus Pledge bound the Republican members of the committee to vote as Cotter wanted. He also claims that the House should have let him present evidence or thoroughly defend his case, allow him enough time to look at exhibits, and so on. The committee heard the May 19 recording during this hearing. On September 11, Courser resigned, because it was clear by that point that the House planned to vote to expel him.

Courser first sued the House, Bowlin, Beydoun, Cotter, McBroom, Saari, Swartzle, Cline, Allard, Graham, and others in 2016. He voluntarily dismissed his complaint a few months later. He later split up his lawsuits, suing only the House, Bowlin, Beydoun, Cotter, McBroom, Saari, and Swartzle in this case on August 7, 2018. Then he sued Allard, Cline, Graham, and others in several separate lawsuits. He amended his complaint in this case in December 2018, and it now includes eighteen total counts.

The House, Beydoun, Bowlin, Cotter, McBroom, and Swartzle moved to dismiss all claims, and Saari filed a separate motion to dismiss all claims. Courser opposed the motions and filed a motion for Rule 37 sanctions based on spoliation of evidence. He alleged that Defendants deleted and modified files and programs on his computer after they seized it.

The district court granted Defendants' motions on all claims and denied Courser's motion for sanctions. This appeal followed.

## II.

Courser claims that the district court should have converted Defendants' motions to dismiss into motions for summary judgment. So we analyze that question first. Second, we look at various immunities raised by Defendants. Third, we assess whether Courser has plausibly alleged any claims against the Defendants. And fourth, we examine Courser's motion for sanctions.

### A. Conversion to a Rule 56 Motion

Courser argues that the district court should have converted Defendants' Rule 12(b)(6) motions into motions for summary judgment because Defendants attached exhibits and referenced materials outside his complaint. Under Rule 12 of the Federal Rules of Civil Procedure:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). But when reviewing a 12(b)(6) motion, a district court "may consider"—without converting the motion to a Rule 56 motion—"the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

This court has interpreted the text of Rule 12(d) to mean that a district court must either (1) expressly reject evidence outside the complaint that is attached to a 12(b)(6) motion or an opposition to such motion, or (2) treat the motion to dismiss as a motion for summary judgment. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (citing *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 502–04 (6th Cir. 2006)) (discussing these two options in the context of materials attached to an opposition to a 12(b)(6) motion). If a district

court fails to expressly reject such exhibits and materials, though, "we have held that the failure to convert the motion to a motion for summary judgment is not reversible error if the court's 'rationale' in no way 'hinged on the additional information provided there.'" *Id.* (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997); *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993)). "That is, this 'error will be treated as harmless if the dismissal can be justified without reference to any extraneous matters.'" *Id.* (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1364 (3d ed. Supp. 2019)).

Defendants attached several exhibits to their motions to dismiss.[3] At least some of these exhibits were neither referenced in the complaint nor "central to the claims contained therein." *Bassett*, 528 F.3d at 430. But in its rationale for dismissing all the counts in Courser's complaint, the district court did not rely on any of the allegedly prohibited exhibits that Defendants attached. So under *Bates*, even if the district court should have expressly rejected these exhibits (or else converted the motions to Rule 56 motions), the error was harmless because none of these exhibits factored into the district court's rationale.

On the other hand, the district court did rely on other materials that the House, Beydoun, Bowlin, Cotter, McBroom, and Swartzle mentioned or pointed the district court to in their motion to dismiss. But all of those outside materials appear to be public records, and, at the very least, Courser does not dispute that they are public records.[4] Plus, Courser *himself* referenced and attached snippets of some of these records that the district court cited. So under *Bassett*, which

---

[3] In the House, Beydoun, Bowlin, Cotter, McBroom, and Swartzle's motion, they also moved to dismiss for lack of jurisdiction under Rule 12(b)(1).

[4] We hesitate in concluding that the police report is a public record that the district court could use. But we note that the panel in *Allard* referred to the police report when discussing the civil stalking claim in that case. 969 F.3d at 620. Under that reasoning, we find the district court's use of the police report permissible in this case.

permits reliance on public records without conversion of the motion, the district court permissibly relied on these records without conversion.

For these reasons, the district court did not err by treating Defendants' 12(b)(6) motions as motions to dismiss.

## B. Immunities

### 1. Sovereign Immunity

The states' sovereign immunity protects them from suit in federal court unless they consent, the federal Constitution specifically overrides that immunity, or Congress abrogates the states' immunity under a limited number of its enumerated powers. *See Ladd v. Marchbanks*, 971 F.3d 574, 577–78 (6th Cir. 2020). And that immunity extends to arms of the state, including the states' officers. *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

But sovereign immunity does not bar plaintiffs from suing state officials in federal court for prospective injunctive relief. *Ernst v. Rising*, 427 F.3d 351, 365 (6th Cir. 2005) (citing *Edelman v. Jordan*, 415 U.S. 651, 667 (1974)). That said, plaintiffs must sue the proper state officials— those who would enforce the challenged law. *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (emphasizing that "a state official must possess 'some connection with the enforcement of the [challenged law]'" (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)) (alteration in original)).

Plaintiffs can also sue officials in their individual capacities. *See, e.g.*, *Foulks v. Ohio Dep't of Rehab. & Corr.*, 713 F.2d 1229, 1233 (6th Cir. 1983) (allowing a suit for damages against an official in his individual capacity); *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994) (allowing a suit over pendent state-law claims against an official in his individual capacity, even though the Eleventh Amendment bars suits for pendent state-law claims against officials in their

official capacity (*see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984))). That said, it is well established that sovereign immunity protects state officers from official capacity suits for retrospective damages if the money would come from the state treasury. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (*Ex parte Young*'s exception "does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury" (internal quotation marks and citations omitted)) (quoting *Pennhurst*, 465 U.S. at 101 n.11); *Quern v. Jordan*, 440 U.S. 332, 337–38 (1979).

Here, all claims against the House of Representatives are barred by sovereign immunity because the House of Representatives is an arm of the State. That's because Article IV, Section 1 of the Michigan Constitution says so. Mich. Const. art. IV, § 1 ("Except to the extent limited or abrogated by article IV, section 6 or article V, section 2, the legislative power of the State of Michigan is vested in a senate and a house of representatives."). And "[i]f the [state] Legislature did not qualify as the state or its 'alter ego' or 'arm,'" it is difficult "to comprehend what would so qualify." *Reavis v. Legislature of La.*, No. 14-2543, 2015 WL 631456, at *4 (E.D. La. Feb. 13, 2015).

As for the six others—Beydoun, Bowlin, Cotter, McBroom, Saari, and Swartzle ("the individual Defendants")—Courser sued them almost exclusively for retrospective damages. So under sovereign immunity principles, at best the claims here may only be viable against the individual Defendants in their individual capacities, not their official capacities.

We recognize three caveats to these conclusions. First, Saari did not raise this defense. But to the extent Courser sues him in his official capacity for money coming from the State treasury, the suit against him in any official capacity is effectively a suit against the State. *See Stewart*, 563 U.S. at 255. And the House asserts its sovereign immunity here, so Saari's failure to

raise the immunity issue on appeal cannot bind the State (as the true party in interest). Thus, the claims against him (or his successor) in his official capacity fail.

Second, we cannot reasonably understand Count 13 (Indemnification) to be against the individual Defendants in their individual capacities, so that claim is completely barred against any Defendant in any capacity.

Third, for Count 3 (relating to Article IV, Section 16 of the Michigan Constitution), Courser also requests prospective, equitable relief on top of damages. Cotter and McBroom, as the Speaker and a member of the House respectively, are the only Defendants who may have a possible connection to the enforcement of this provision of the Michigan Constitution. We assume, without deciding, that Count 3 properly exists against these two in their *official* capacities as well as against the individual Defendants (for damages) in their individual capacities.

In sum, sovereign immunity bars every count against the House. And Courser has not requested injunctive relief against the individual Defendants in their official capacities, except Count 3 against Cotter and McBroom. All counts, except Count 13, remain against the six individual Defendants in their individual capacities, as far as Courser seeks damages.

## 2. Legislative Immunity

Legislative immunity protects state legislators from suits related to the actions that they took in their legislative capacities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The proper inquiry for the application of legislative immunity is whether the legislator is acting in:

> [A]n integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). And legislative aides share in legislative immunity to a degree. *Id.* at 507.

To the extent that any of the claims here relate to the allegedly improper actions at the Select Committee hearing (including using the May 19 recording), legislative immunity bars those claims. But since many claims also implicate alleged actions taken outside the legislative capacity, those claims remain to the degree that they relate to those non-legislative actions.

### 3. Governmental Immunity

In their appellate brief, Swartzle and Saari point out governmental immunity for Count 7 (Defamation), Count 9 (Intrusion Upon Seclusion), Count 10 (Tortious Interference), Count 11 (Intentional Infliction of Emotional Distress), Count 12 (Negligent Infliction of Emotional Distress), and Count 14 (Fraudulent Misrepresentation), which Courser only brought against Swartzle and Beydoun. Beydoun, Bowlin, Cotter, and McBroom mention governmental immunity for those same counts, except Count 14. So we analyze potential governmental immunity for those six counts.

In Michigan, a government employee can raise governmental immunity as an affirmative defense. The court analyzes governmental immunity using the following framework, outlined in *Odom* by the Michigan Supreme Court:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under [Mich. Comp. Laws §] 691.1407(5).

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

(3) If the plaintiff pleaded a negligent tort, proceed under [Mich. Comp. Laws §] 691.1407(2) and determine if the individual caused an injury or

damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

    (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

    (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

    (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity . . . by showing the following:

    (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

    (b) the acts were undertaken in good faith, or were not undertaken with malice, and

    (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). A legislator is only entitled to absolute immunity under Mich. Comp. Laws § 691.1407(5) if he or she was "acting within the scope of his or her . . . legislative . . . authority." "Michigan courts define the 'scope of authority' as '[t]he reasonable power that an agent has been delegated or might foreseeably be delegated in carrying out the principal's business.'" *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 689 (6th Cir. 2018) (alteration in original) (quoting *Backus v. Kauffman*, 605 N.W.2d 690, 694 (Mich. Ct. App. 1999)). The governmental employee must "raise and prove his entitlement to immunity as an affirmative defense." *Odom*, 760 N.W.2d at 227–28.

Courser alleges facts suggesting that some actions relevant to Counts 7, 9, 10, 11, and 12 fell outside the scope of the actors' authorities, and the individual Defendants have not demonstrated otherwise (or that they reasonably believed otherwise). For example, for IIED

(Count 11), we can only reasonably conclude that the individual Defendants' alleged actions of wiretapping, surveilling, publishing, and distributing the information they obtained are actions that fall outside the scope of the individual Defendants' authorities as legislators and lower-ranking legislative employees. So governmental immunity fails for those claims.

For Count 14 (Fraudulent Misrepresentation), governmental immunity is a closer call. For this claim, Courser says that Defendants Swartzle and Beydoun, "acting as his attorney[s,]" falsely assured him that if he appeared at the committee meeting and met with Defendant Bowlin, the House would only censure him, not expel him. (R. 33, PID 516.) Since the two are lower-ranking governmental employees and fraudulent misrepresentation is an intentional tort, the fourth provision of the *Odom* framework mentioned above applies to this analysis.

The conversation with Courser seems to consist of an action within Swartzle and Beydoun's course of employment as the House General Counsel and House Majority Legal Counsel, respectively. And the comments were discretionary, not ministerial. The next question is whether Swartzle and Beydoun made these comments in good faith or without malice. Courser says the duo "knew the representations and assurances . . . were false" and "intended that the representations and assurances . . . would be relied upon." (*Id.* at 517.) But he "ha[s] not averred facts allowing the inference that defendants had acted with malice." *Brent*, 901 F.3d at 699 (analyzing governmental immunity under the fourth prong of *Odom* for an intentional infliction of emotional distress claim); *see also Stoll v. Luce Mackinac Alger Schoolcraft Dist. Health Dep't Bd. of Health*, No. 316287, 2014 WL 5364085, at *3 (Mich. Ct. App. Oct. 21, 2014) (applying governmental immunity when the plaintiff "offered no facts to support his conclusions" that the defendant acted with malice). So governmental immunity applies for Count 14 against Swartzle. (Beydoun failed to raise the defense on appeal.)

Overall, Counts 7, 9, 10, 11, and 12 fail for reasons besides governmental immunity. But governmental immunity applies for Swartzle regarding Count 14.

## C. Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for the dismissal of a claim if the complaint fails to "state a claim upon which relief can be granted[.]" Since this appeal is from a motion to dismiss, we take as true all factual allegations in Courser's complaint and make all reasonable inferences in his favor. *Doe v. Baum,* 903 F.3d 575, 581 (6th Cir. 2018). We review de novo the district court's dismissal of Courser's complaint. *Id.* at 580.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57, 570 (2007)). The factual allegations must "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

We need not accept a "legal conclusion couched as a factual allegation." *Republic Bank & Tr. Co. v. Bear Sterns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 246–47 (alteration in original) (quoting *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Aside from the basic requirements for stating a claim, waiver and forfeiture principles apply to many counts Courser brings in his complaint.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alterations in original) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).  And "it is not our function to craft an appellant's arguments[.]"  *United States v. Phibbs*, 999 F.2d 1053, 1080 n.12 (6th Cir. 1993).

In *Estate of Barnwell v. Grigsby*, this court recently found that the appellant waived an argument given its perfunctory and skeletal character.  801 F. App'x 354, 372 (6th Cir. 2020).  Making a § 1983 excessive-force claim and related state-law battery claim, the *Grigsby* appellant only argued that "[t]here was excessive force and battery in the administration of a paralytic drug to" the defendant.  *Id.* (alteration in original).  The court found this statement insufficient because it "failed to 'provide even a modicum of legal argument as to why the district court erred[.]'"  *Id.* (quoting *Cooper v. Com. Sav. Bank*, 591 F. App'x 508, 509 (6th Cir. 2015)).

Additionally, when "a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment or motion to dismiss, we . . . deem[] the claim forfeited."  *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) (quoting *Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124–25 (6th Cir. 2018)).  In *Scott*, the plaintiffs failed to address the district court's actual reason for dismissing their fraudulent misrepresentation claim—the statute of frauds.  *Id.*

Instead, they only addressed the merits of their claim, which the district court did not even address. *Id.* Again, this court found that the plaintiffs "forfeited any challenge to the district court's disposition of this claim" because they didn't address the actual reasoning of the district court. *Id.* at 522–23.

Similarly in *Grosswiler*, the plaintiffs only contested the district court's finding about whether they showed a genuine issue of material fact over whether they worked more than forty hours a week. *Grosswiler v. Freudenberg-Nok Sealing Techs.*, 642 F. App'x 596, 598 (6th Cir. 2018). They did not contest the district court's "alternative holding" that they failed to show the company knew or should have known about unpaid overtime. *Id.* "Because [the] [p]laintiffs . . . failed to address the district court's alternate basis for its decision," this court found that the plaintiffs abandoned the issue. *Id.* at 599.

### 1. 42 U.S.C. § 1983 (Count 1)

The individual Defendants raise qualified immunity for the § 1983 claims against them. "Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019). Generally, qualified immunity is better left for the summary judgment stage, rather than the 12(b)(6) stage. *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015); *In re Flint Water Cases*, 960 F.3d 303, 325 (6th Cir. 2020). This is "because, at this point in the case, 'the precise factual basis for the plaintiff's claim or claims may be hard to identify,' meaning 'the court's task can be difficult.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020) (quoting *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2019)). But dismissal based on qualified immunity is appropriate if a plaintiff fails to plausibly allege facts that, taken as true, "show the violation of a right so clearly established that

a reasonable official would necessarily have recognized the violation." *Kollaritsch*, 944 F.3d at 626. "[T]he fundamental question presented in this case is whether plaintiff['s] complaint alleges sufficient facts to make out [a] valid . . . claim." *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

So we ask (1) whether Courser has plausibly alleged "that [an] official violated a statutory or constitutional right, and (2) [whether] that . . . right was clearly established at the time of the challenged conduct." *In re Flint Water Cases*, 960 F.3d at 323 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). We can address these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In Count 1, Courser alleges that the individual Defendants violated four provisions of the federal Constitution. We discuss each in turn.

### a. Equal Protection

In *Courser v. Allard*, this court found that the district court properly ruled "that Courser failed to state a constitutional violation and rightly dismissed [his equal protection] claim." 969 F.3d at 617. Bound by that decision's reasoning, we likewise find that Courser failed to plausibly allege a violation of the Equal Protection Clause here. So the individual Defendants are entitled to qualified immunity for this claim. Alternatively, legislative immunity fully bars this claim.

### b. Procedural Due Process

The Fourteenth Amendment provides, in part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. For a procedural due process claim "a plaintiff must show that (1) he or she had a life, liberty, or property interest protected by the Due Process Clause; (2) he or she was deprived of this protected interest;

16

and (3) the state did not afford adequate procedural rights." *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014)).

On appeal, Courser emphasizes that he is *not* alleging the State provided inadequate process for a deprivation of a *property* interest. (*See* Appellant Br. at 30 ("The district court glossed over the primary argument made at oral argument: Courser was deprived of a 'liberty' interest. Instead, the district court focused primarily on a 'property' interest. Prior to and during the select committee hearings, Courser was deprived of a liberty interest and not afforded a full public process.").) Instead, he asserts that the Defendants deprived him of a liberty interest.

Courser's asserted liberty interest in his complaint is difficult to comprehend, and he provides us little to no guidance on appeal to clarify his assertions. In his brief, Courser cursorily argues that "[p]rior to and during the select committee hearings, Courser was deprived of a liberty interest[.]" (*Id.*) He also cites general propositions about liberty interests from unrelated cases about bodily injuries. His brief fails to clarify his purported liberty interest. What's more, Courser's complaint only attempts to explain how the House failed to give him due process during the Select Committee hearing and the whole expulsion process. But nowhere does he explain what *liberty* interest he had that the individual Defendants could not deprive him of without process.

As in *Allard*, Courser's procedural due process claim fails for failure to identify a liberty interest protected by the Fourteenth Amendment. *See Allard*, 969 F.3d at 616 ("Courser has not stated a liberty interest or cited any cases to back up his claim of an alleged deprivation of liberty."). Because Courser failed to plausibly allege a violation of a constitutional right, the individual Defendants are entitled to qualified immunity. Alternatively, legislative immunity fully bars this claim.

### c. Substantive Due Process

Courser's complaint in *Allard* was essentially the same as his complaint in the instant case. *See id.* at 614 ("The operative complaints filed in each case are virtually identical."). This court in *Allard* found that Courser's substantive due process claim failed because he did not specify a liberty interest in that complaint. *Id.* at 616. Bound by that decision, which hinged on essentially the same complaint, we hold that Courser failed to plausibly allege a substantive due process claim here. So the individual Defendants are entitled to qualified immunity on this claim.

### d. Fourth Amendment

Although Courser's complaint discusses multiple alleged recordings, he argues on appeal only that Graham's recording of the "inoculate the herd" conversation on May 19, 2015 violated Courser's Fourth Amendment rights. So for this claim, we focus on that recording only.

In *United States v. White*, a plurality of the Supreme Court reiterated its prior decisions that suggested that "however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." 401 U.S. 745, 749 (1971). "No warrant to search and seize is required in such circumstances . . . when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and evidence so gathered is later offered in evidence." *Id.* (internal quotations omitted) (citing *Lopez v. United States*, 373 U.S. 427 (1963)). In *White*, a defendant spoke with a government informant, who carried a radio transmitter on his person. *Id.* at 746–47. Other agents listened in on the conversation by "monitoring the frequency of [the] radio transmitter." *Id.* The Court explained its prior reasoning: If an agent can write down the contents of a conversation with a defendant after their conversation and then testify about that conversation in court, this is effectively no

different from the agent recording the conversation to better relay the contents of the conversation.

*Id.* at 751. The Court said:

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

*Id.* And a majority of the Court reiterated this reasoning a few years later when it said:

> [T]here is a substantial distinction between "revelation[s] to the Government by a party to conversations with the defendant" and eavesdropping on conversations without the knowledge or consent of either party to it. A homeowner takes the risk that his guest will cooperate with the Government but not the risk that a trustworthy friend has been bugged by the Government without his knowledge or consent.

*United States v. Karo*, 468 U.S. 705, 716 n.4 (1984) (second alteration in original) (quoting *White*, 401 U.S. at 749); *see also United States v. Caceres*, 440 U.S. 741, 750–51 (1979) (citing favorably these principles from *White*).

Under these premises from *White* and *Karo*, no Fourth Amendment violation resulted from Graham recording the May 19 conversation. Courser took the risk that his colleague might relay the contents of that conversation to others or, similarly, record that conversation and have other House employees listen to it later. Unlike a situation when neither party knew about the recording, Graham, a House employee, of course knew that he was recording the conversation.

For these reasons, Courser has failed to plausibly allege a violation of a constitutional right. Thus, the individual Defendants are entitled to qualified immunity.

### 2. 42 U.S.C. § 1985 (Count 2)

While Courser mentions 42 U.S.C. § 1985 in his appellate brief's Issue Three argument heading, he fails to make any arguments about § 1985 in that section. So he has abandoned his § 1985 claim on appeal. *See McPherson*, 125 F.3d at 995–96.

Even if he had not abandoned the claim, it would have failed anyway. The three sections under § 1985 require the following:

> Section 1985(1) . . . prohibits conspiracies to interfere with federal officers in the performance of their duties, and the first clause of § 1985(2) . . . prohibits conspiracies to influence parties, witness, or jurors in federal court proceedings. . . . Under both the second clause of § 1985(2), which prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights, and § 1985(3), which prohibits conspiracies to deprive persons of their equal protection rights, a plaintiff must allege that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

*Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006) (quoting *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)).

Courser was a state official, not a federal one, so § 1985(1) does not apply. And Courser has alleged no conspiracy to influence anyone involved in a federal court proceeding or any conspiracy to interfere with the due process of his state court criminal proceedings, so § 1985(2) does not apply. Finally, Courser's complaint does not allege racial or class-based discriminatory animus. The closest he gets is asserting that the House treated him differently than other representatives who have had expulsion hearings, but that does not implicate "class-based, invidiously discriminatory animus." So § 1985(3) does not apply. For these reasons, Courser has failed to state a plausible § 1985 claim.

### 3. Mich. Const. art. IV, § 16 (Count 3)

Courser claims that Article 4, Section 16 of the Michigan Constitution is unconstitutionally vague and overbroad. As outlined above, this claim, if sustainable at all, could only possibly be against (1) Cotter and McBroom in their official capacities (to the extent that it requests prospective, injunctive relief), though we don't decide for certain, and (2) against all individual Defendants in their individual capacities (since it also requests damages). But Courser fails to make any specific arguments about Count 3 on appeal. So he has waived this claim.

### 4. Mich. Const. art. I § 17 – Fair and Just Treatment Clause (Count 4)

Courser sought only damages for the individual Defendants' alleged violation in Count 4. When dismissing this claim, the district court cited *Smith v. Dep't of Pub. Health*, 410 N.W.2d 749 (Mich. 1987), for the proposition "that a plaintiff seeking damages under Michigan's Constitution—as Courser does here—may only sue the State and its officials in their official capacities." Under this principle, the district court found that the claim could only remain against the State and its officials in their official capacities, not the officials in their individual capacities. And with the claim remaining only against the House and the officials in their official capacities, the district court then threw it out as barred by sovereign immunity. So the district court found that the principle from *Smith* barred this count against the individual Defendants in their individual capacities, and sovereign immunity barred this count against the Michigan House of Representatives and the individual Defendants in their official capacities.

Now, on appeal, Courser argues against sovereign immunity. And he contends that the district court should not have dismissed Count 4. But he fails to provide any argument refuting the district court's reasoning based on *Smith*. Instead, he argues that the district court's opinion about a similar count in another case does not apply here. So under the principles outlined by *Scott*

and *Grosswiler*, because Courser failed to address the district court's reasoning for throwing out the claim against the individual Defendants in their individual capacities, he has forfeited any challenge to that conclusion. And we already outlined above why sovereign immunity bars the claim against the Michigan House of Representatives and the individual Defendants in their official capacities. So we affirm the district court's decision to dismiss the entire count, without addressing the merits.

### 5. Federal Wiretapping (Count 5)

The district court dismissed Courser's federal wiretapping claim for several reasons, one being that the statute of limitations barred the claim. Yet on appeal, Courser fails to address the statute of limitations. So under the principles outlined by *Scott* and *Grosswiler*, he has forfeited any challenge to the district court's statute of limitations reasoning.

On top of that, the district court correctly concluded that the statute of limitations bars this claim. Although a 12(b)(6) motion "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations . . . sometimes the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). In such a case, dismissal is appropriate. *Id.*

The statute of limitations for federal wiretapping is "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Courser filed his initial complaint in this case on August 7, 2018. This would mean the cause of action would have had to accrue on or after August 7, 2016. But all the recordings and disclosures that Courser alleges in his complaint occurred before he left office in September 2015.

The district court points out that tolling may apply because Courser had first sued the parties in 2016 and then voluntarily dismissed his complaint ninety-five days later. Even if tolling

applied, this would only set the accrual date to sometime in May 2016 instead of August 2016. But still—Courser has alleged no facts after May 2016, let alone after September 2015, that relate to a federal wiretapping claim.

So on top of forfeiting the federal wiretapping claim, Courser did not file within the statute of limitations timeframe.

### 6. Michigan Eavesdropping (Count 5)

Courser claims that the individual Defendants violated Michigan's eavesdropping law, *see* Mich. Comp. Laws §§ 750.539, by recording Courser. In his brief, Courser only contests the May 19 recording, not any of the other alleged bugs that Allard, Cline, and Graham placed or any of their other recordings. So we focus only on that recording.

The eavesdropping statute does not apply to participants in the conversation. *Sullivan v. Gray*, 324 N.W.2d 58, 59–61 (Mich. Ct. App. 1982) (per curiam). In other words, a person is not liable under the statute if he recorded a conversation in which he participated. Courser says Graham recorded the May 19 conversation. And Graham participated in that conversation. So Courser has failed to state a plausible claim against Graham.

Courser argues that Graham picking up Gamrat in the recording made the recording illegal. Whether Gamrat had a claim against Graham is not at issue here, and the panel that addressed that question already found that Gamrat had no plausible claim against Graham. *See Gamrat*, 2020 WL 4346677, at *4.

Because Graham did not act illegally by recording Courser, the individual Defendants could not be liable for Graham's actions, even assuming Courser plausibly alleged a conspiracy between Graham and the individual Defendants here. Courser's claim against the individual Defendants fails.

### 7.  Computer Fraud and Abuse Act (Count 6)

For Count 6, Courser relies on factual allegations that the individual Defendants accessed his passwords and private computer information and altered files on his computer once they retained it after *The Detroit News* article came out.

The district court dismissed Courser's CFAA claim under 18 U.S.C. § 1030 for two reasons.  First, the statute of limitations barred the claim.  Second, Courser failed to state a claim because he failed to properly allege damages.  But on appeal, Courser only addresses the statute of limitations argument.  And he never addresses the district court's finding that he failed to properly allege damages or a loss.  So under the principles of *Scott* and *Grosswiler* mentioned above, Courser has forfeited any challenge to the district court's damages holding.

But even on the merits, Courser fails to state a claim on which relief could be granted for this count.  To state a claim, he had to allege facts showing a plausible "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).  All he alleges is that he "suffered damages and loss," that the Defendants "caused damage," and that the "Defendants['] conduct involved a loss to COURSER during any 1-year period aggregating at least $5,000 in value [so] COURSER also suffered a loss through Defendants' attempt to commit an offense punishable under 18 U.S.C. § 1030."  (R. 33, PID 497–98.)  These are merely conclusory legal statements posing as factual allegations, which cannot state a claim under Rule 12(b)(6).  *See Republic Bank & Tr. Co.*, 683 F.3d at 246 (finding that we need not accept a "legal conclusion couched as a factual allegation").  Courser has alleged no facts to show a loss fitting the statute.  Thus, he has failed to state a claim upon which relief can be granted.

24

Given these two independent reasons for disposing of the claim, we do not need to address whether Courser filed within the statute of limitations timeframe.

**8. Michigan Fraudulent Access to Computers, Computer Systems, and Computer Networks Act (Count 6)**

Courser provides no argument about this state law claim at all in his brief. He only mentions the Michigan statute in the subheading for Count 6. So he has forfeited this claim altogether.

**9. Defamation (Count 7)**

For his defamation claim, Courser says that someone edited the May 19, 2015 recording and "fabricated" it before giving it to *The Detroit News*. A plaintiff must bring a defamation claim within one year after the claim accrues. Mich. Comp. Laws § 600.5805(11).

To show that he timely filed his defamation claim, Courser argues that the statute of limitations was tolled under Michigan's common-law discovery rule. But Michigan law does not recognize a common-law discovery rule. Instead, as the Michigan Supreme Court has stated, the Michigan legislature displaced the common law by adopting a comprehensive statutory limitations and tolling scheme:

> Since the Legislature has exercised its power to establish tolling based on discovery under particular circumstances, but has not provided for a general discovery rule that tolls or delays the time of accrual if a plaintiff fails to discover the elements of a cause of action during the limitations period, no such tolling is allowed. Therefore, we conclude that courts may not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of [Mich. Comp. Laws §] 600.5827.

*Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 672 (Mich. 2007). Courser does not point to any statutory discovery rule to toll the accrual of his defamation claim. *See McCormick v. Richard*, No. 315811, 2014 WL 4628847, at *2 (Mich. Ct. App. Sept. 16, 2014) (citing *Trentadue* and refusing to rely on an "extrastatutory discovery rule" to toll the accrual of a defamation claim).

25

A defamation claim under Michigan law accrues at the time of "the wrong upon which the claim is based was done regardless of the time when damage results." *See Mitan v. Campbell*, 706 N.W.2d 420, 422 (Mich. 2005) (quoting Mich. Comp. Laws § 600.5827).

The wrongful dissemination and fabrication would have occurred before or during August 2015, because *The Detroit News* published the article about the May 19 recording on August 7, 2015. And Courser alleges harm based on that article's August 2015 release, so his argument that the claim accrued later is meritless.

Moreover, this court in *Allard* already held that the statute of limitations barred a substantively identical defamation claim against Allard, Cline, and Graham. 969 F.3d at 619–20. Since Courser filed the initial and amended complaints in that case on almost exactly the same dates as the complaints in this case, we are bound by *Allard*'s logic. This claim is untimely.

Thus, the district court properly dismissed his claim as barred by the statute of limitations.

### 10. Michigan Civil Stalking (Count 8)

In *Allard*, this court disposed of claims against Allard, Cline, and Graham because "Courser failed plausibly to allege that Defendants here sent the extortion texts." 969 F.3d at 620. The panel in *Allard* concluded that Joe Gamrat and David Horr sent the texts. *Id.* The *Gamrat* panel similarly found that "none of the House Defendants or staff members sent those texts." 2020 WL 4346677, at *3. And the *Allard* panel determined that Courser could not "mount a civil stalking claim based on his conspiracy claim because the civil stalking claim is necessary for him to prove his conspiracy claim." 969 F.3d at 620. Bound by these reasonings, Courser failed to allege a civil stalking claim against the individual Defendants here too.

### 11. Intrusion Upon Seclusion (Count 9)

Courser's appellate brief only cursorily touches on intrusion by seclusion. He presents the elements for intrusion upon seclusion, and then merely cites his complaint to argue that "[t]he allegations in the complaint support these elements." (Appellant Br. at 43.) Saying he "need only 'state a claim to relief that is plausible on its face,'" and that he "has done [s]o here" does not provide sufficient argument. (*Id.*) This bare assertion of meeting the required standard provides no "developed argumentation" and impermissibly requires "the court to . . . put flesh on [the argument's] bones." *McPherson*, 125 F.3d at 995–96 (quoting *Citizens Awareness Network, Inc.*, 59 F.3d at 293–94). So Courser has waived this issue.

### 12. Tortious Interference (Count 10)

Courser is an attorney and alleges that the individual Defendants tortiously interfered with his business relationships with his clients. For this claim too, Courser merely states the elements of tortious interference with a business relationship, then cites some paragraphs of his complaint to argue that "[t]hese elements are all set forth and satisfied in the First Amended Complaint[.]" (Appellant Br. at 43–44.) This bare recitation is not enough to preserve a claim. *McPherson*, 125 F.3d at 995–96.

But even on the merits, the claim still fails. To show tortious interference with a business relationship or expectancy, the plaintiff must prove:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005). Courser does not sufficiently allege facts to state a plausible claim. His allegations

27

are merely legal conclusions tracing the language of the elements that he frames as factual allegations. For example, for the first element he asserts: "COURSER has valid business relationship [sic] or expectancy with his clients. . . . [A]ctual relationships existed." (R. 33, PID 508.) And he doesn't allege any facts in support. We are left to speculate, which is improper under *Iqbal* and *Twombly*. This allegation is a mere legal conclusion tracing the language of the first element in *Health Call of Detroit*.

For the third element he again merely traces the legal standard. He asserts: "Defendants' act of publishing . . . was an intentional interference . . . causing a breach of termination of the relationship[.]" (*Id.*) And most conclusory of all he says: "COURSER has suffered damages, which continue," tracking the fourth element. (*Id.*) He concludes with a standard damages request. None of these statements are factual allegations; they are mere legal conclusions. Courser does not present any facts to move these allegations beyond speculation to plausibility. So on top of waiving the issue, Courser's claim has no merit.

### 13. Intentional Infliction of Emotional Distress (Count 11)

Courser alleges that the individual Defendants are liable for intentional infliction of emotional distress (IIED). For a prima facie IIED claim in Michigan:

> [T]he plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff.[5]

*Lucas v. Awaad*, 830 N.W.2d 141, 150 (Mich. Ct. App. 2013) (quoting *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010)). For the causation and damages elements, Courser only says: "As the result of wiretapping and surveillance and then publishing information,

---

[5] Although the Michigan Court of Appeals has recognized the tort of IIED, the Michigan Supreme Court has not. *See Melson ex rel. Melson v. Botas*, 863 N.W.2d 674, 674 (Mich. 2015) (mem.) (Markman, J., dissenting) ("Michigan is one of only two states whose highest court has not dispositively address the establishment, and the contours, of the tort of intentional infliction of emotional distress (IIED).").

COURSER has suffered severe emotional distress." (R. 33, PID 510.) Courser presents this statement as a factual allegation, when it is really a disguised legal conclusion. All he does is state the causation and distress elements by almost quoting them verbatim. He says "[a]s a result" of Defendants' conduct he "suffered severe emotional distress." Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courser has failed to allege factual allegations for all material elements. *See Bredesen*, 500 F.3d at 527.

### 14. Negligent Infliction of Emotional Distress (Count 12)

While Courser mentions negligent infliction of emotional distress (NIED) in one of his subheadings, he makes no arguments about NIED in that section. He only focuses on his IIED claim in that section. So he has waived the NIED issue. *See McPherson*, 125 F.3d at 995–96; *see also Phibbs*, 999 F.2d at 1080 n.12.

Even so, he also fails to state a claim. In Michigan, an NIED claim requires that:

> (1) the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock fairly contemporaneous with the accident.[6]

*Tschirhart v. Pamar Enters., Inc.*, No. 327125, 2016 WL 3541827, at *3 (Mich. Ct. App. June 28, 2016) (citing *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 734–35 (Mich. Ct. App. 1986)). Courser alleges no facts satisfying these elements. For instance, he provides no facts about harm to a family member. So on top of waiving his NIED claim, he failed to state that claim.

---

[6] The Michigan Supreme Court also has not recognized the tort of NIED. *See Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330, 331 n.6 (Mich. 2002) (per curium) ("This Court has never recognized the existence of such a cause of action, and we decline to discuss the validity of plaintiffs' claim at this time because of a discussion of the merits of the claim is unnecessary to our determination.").

**15. Indemnification (Count 13)**

Courser also claims that the Michigan House of Representatives failed to "provide him with a defense and pay his legal costs and other expenses" when Allard and Graham sued him in state court and when the state criminally prosecuted him "for actions stemming from his employment as a Representative." (R. 33, PID 514.) Under Michigan law:

> Whenever a claim is made or a civil action is commenced against an officer, employee, or volunteer of a governmental agency for injuries to persons or property caused by negligence of the officer, employee, or volunteer while in the course of employment with or actions on behalf of the governmental agency and while acting within the scope of his or her authority, *the governmental agency* may pay for, engage, or furnish the services of an attorney to advise the officer, employee, or volunteer as to the claim and to appear for and represent the officer, employee, or volunteer in the action. *The governmental agency* may compromise, settle, and pay the claim before or after the commencement of a civil action. Whenever a judgment for damages is awarded against an officer, employee, or volunteer of a governmental agency as a result of a civil action for personal injuries or property damage caused by the officer, employee, or volunteer while in the course of employment and while acting within the scope of his or her authority, *the governmental agency* may indemnify the officer, employee, or volunteer or pay, settle, or compromise the judgment.

Mich. Comp. Laws § 691.1408(1) (emphases added). And:

> When a criminal action is commenced against an officer or employee of a governmental agency based upon the conduct of the officer or employee in the course of employment, if the employee or officer had a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the alleged conduct, *the governmental agency* may pay for, engage, or furnish the services of an attorney to advise the officer or employee as to the action, and to appear for and represent the officer or employee in the action. An officer or employee who has incurred legal expenses after December 31, 1975 for conduct prescribed in this subsection may obtain reimbursement for those expenses under this subsection.

*Id.* § 691.1408(2) (emphasis added). Courser also seems to allege constitutional arguments under this count as well. He says the "Defendants' decision not to indemnify COURSER is unconstitutional" and "violates the equal protection and due process of law and freedom of speech." (R. 33, PID 515.)

30

Courser's claims under these statutory provisions fail because he does not explain why he has a right to sue for payment under these provisions. By their plain terms ("may"), Mich. Comp. Laws § 691.1408(1) and (2) give governmental agencies discretion to provide attorneys and legal expenses. They do not give individuals the right to such benefits. Courser has not shown that he has a cause of action under these discretionary provisions.

Moreover, the language of § 691.1408 points to the governmental agency itself paying legal expenses—not the individual officers. So Courser cannot possibly maintain that the individual Defendants in their *individual* capacities had to indemnify him. Plus, Courser only appears to ask for damages for this count, not any form of injunctive relief, so sovereign immunity bars this claim even if it is against the individual Defendants in their official capacities.[7] Finally, sovereign immunity bars the claim against the House of Representatives. Thus, this count fails against all Defendants.

### 16. Fraudulent Misrepresentation (Count 14)

The basis of Courser's fraudulent misrepresentation claim[8] is that Swartzle (the House General Counsel) and Beydoun (the House Majority Legal Counsel) told him that the House would only censure, and not expel, him if he met with Bowlin and partook in the Select Committee hearing. The district court rejected Courser's fraudulent misrepresentation claim because no reasonable person could believe that Courser's reliance on these reassurances was reasonable. Yet Courser fails to address the district court's reasoning in his argument for this issue. So under the

---

[7] This is assuming all the individual Defendants could even enforce the provisions, which, of course, at least some cannot.

[8] We note that this claim is subject to the heightened pleading requirement from Rule 9(b) of the Federal Rule of Civil Procedure. *See Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 952–53 (6th Cir. 2014) (applying Rule 9(b) in the context of a Michigan fraudulent misrepresentation claim). But we opt to not analyze whether Courser has met this heightened requirement, instead disposing of it for other reasons.

principles outlined by *Scott* and *Grosswiler*, he has forfeited any challenge to the district court's reasonableness reasoning.

We also explained above how governmental immunity bars this claim against Swartzle.

But even on the merits, Courser's claim fails. In *MacDonald*, this court acknowledged Michigan's six elements for proving fraudulent misrepresentation. *MacDonald v. Thomas M. Cooley L. Sch.*, 724 F.3d 654, 662 (6th Cir. 2013). Element five specifically requires that "the plaintiff acted in reliance on the representation" and that the reliance was reasonable. *Id.* at 662–63.

We agree with the district court's conclusion that no reasonable person could find Courser's reliance on Swartzle and Beydoun's assurances to be reasonable. Although in his complaint he alleges that Swartzle and Beydoun were acting as his attorneys at the time, he ignores this allegation on appeal. Even if they were acting as his counsel, it is not reasonable for Courser to think that they could guarantee the House would merely censure him. Courser has not alleged why it was reasonable for him to rely on the House General Counsel and House Majority's Legal Counsel's guarantee of the full committee's final outcome or the full House's final outcome. Along with forfeiting this claim and the application of governmental immunity, Courser fails to state a claim upon which relief could be granted.

### 17. Racketeer Influenced and Corrupt Organizations Act (Count 15)

Courser cites numerous statutes in his complaint that he claims establish predicate acts for his Racketeer Influenced and Corrupt Organizations Act (RICO) claim. But the district court threw out these claims because Courser failed to show a pattern of racketeering. He fails to address this ruling in his brief. Rather, he emphasizes that co-conspirators are responsible for the actions of their other co-conspirators. And he claims that he properly alleged "predicate acts." (Appellant

Br. at 47–48.) Thus, based on the premises of *Scott* and *Grosswiler*, Courser has forfeited any challenge to the district court's reasoning.

We also note that in his complaint, Courser cites 18 U.S.C. § 1962 and Mich. Comp. Laws § 750.159i for his RICO count. The district court only addressed the federal statute, not the state one. But Courser does not point this out, so we find that he forfeited his state-law claim.

Yet even on the merits, Courser loses. Although 18 U.S.C. § 1962 (RICO) is a criminal statute, an injured party can bring a civil RICO claim against parties who violate any subsection of § 1962. *See* 18 U.S.C. § 1964(c); *Rotella v. Wood*, 528 U.S. 549, 552 (2000). Under 18 U.S.C. § 1962(a), a person cannot receive income from a pattern of racketeering activity. Under 18 U.S.C. § 1962(b), a person, based on a pattern of racketeering activity, cannot "acquire or maintain . . . interest in or control of" an enterprise involved in interstate or foreign commerce. These two provisions have nothing to do with what Courser alleged in his complaint. He never alleged that any of the Defendants received income or had interest or control in an enterprise.

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." The district court's reasoning on this provision is sound.

As the district court explained, Courser failed to allege a "pattern." To show a pattern, a plaintiff has to establish that (1) the racketeering predicate acts were related and (2) those acts "amount to or pose a threat of continued criminal activity." *Aces High Coal Sales, Inc. v. Cmty. Bank & Tr. of W. Ga.*, 768 F. App'x 446, 454 (6th Cir. 2019) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). That second continuity requirement "is both a closed- and open-

ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 455 (quoting *H.J. Inc.*, 492 U.S. at 241).

Open-ended means "the criminal activity is interrupted by the filing of a RICO action." *Id.* at 456. "A threat of continuity may also be established 'by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242.) "The threat of continuing racketeering activity need not be established . . . exclusively by reference to the predicate acts alone; rather, a court should consider the totality of the circumstances surrounding the commission of those acts." *Id.* (quoting *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 410 (6th Cir. 2012)).

The criminal activities that Courser alleged ended in September 2015 once Courser left the House. This action interrupted no criminal activity, and no threat of continuity remained, because the House Defendants achieved their alleged goal: getting Courser out. Courser thus failed to sufficiently plead open-ended continuity.

On the other hand, a plaintiff can plead closed-ended continuity by alleging "a series of related predicates extending over a substantial period of time." *Aces High Coal Sales, Inc.*, 768 F. App'x at 457 (quoting *H.J. Inc.*, 492 U.S. at 242). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). Acts "over a substantial period of time" are required. *H.J. Inc.*, 492 U.S. at 242.

Courser's allegations fail under *H.J. Inc.* They only span a few months (from January 2015 to September 2015). Nine months is not "a substantial period of time." *Id.* Plus, Courser has not

alleged a future threat of more criminal conduct. All the allegedly inappropriate acts ran their course and ended once Courser left office.

For these reasons, Courser has failed to allege a pattern of racketeering. Besides forfeiting his claim, it would have failed on the merits anyway.

### 18. RICO Conspiracy (Count 16)

The district court threw out the RICO conspiracy claim because a conspiracy claim cannot remain when the district court dismisses the other RICO counts. Courser fails to address this point, so he has forfeited any challenge to this reasoning of the district court.

Either way, the district court was correct. Because Courser's RICO claim fails, the RICO conspiracy claim fails too. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) (finding that the "[p]laintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts"). So we affirm the dismissal of Count 16.

### 19. Civil Conspiracy (Count 18)

A party must establish a predicate, unlawful act to allege a conspiracy. *See Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003); *Urbain v. Beierling*, 835 N.W.2d 455, 463–64 (Mich. Ct. App. 2013). Since all counts fail, Courser has established no predicate, unlawful acts. Thus, he fails to allege a conspiracy claim.[9]

## D. Spoliation (Count 17) and Sanctions

Based on Courser's brief heading for this section, he is not appealing the dismissal of his spoliation claim, but only appeals the denial of his Rule 37 motion for sanctions based on spoliation. So Courser has abandoned his spoliation claim.

---

[9] And the argument section of his brief does not discuss concert of action.

But even if he were appealing the dismissal of his spoliation claim, it would fail, because Michigan does not recognize a separate cause of action for spoliation, absent a legal duty to maintain the evidence:

> There is no alleged statutory duty, no alleged promise by [the defendant] to maintain [the evidence], and no special relationship existing that would warrant the imposition of a duty on [the defendant] to preserve evidence. Absent an articulable, legally recognized duty, there can be no cause of action for the alleged tort of spoliation of evidence.

*Teel v. Meredith*, 774 N.W.2d 527, 533 (Mich. Ct. App. 2009). Courser has not alleged an articulable, legally recognized duty to maintain this evidence. So no separate cause of action stands.

As for Courser's motion argument, we review the district court's decision for an abuse of discretion. *Beaven v. U.S. Dep't of Just.*, 622 F.3d 540, 553 (6th Cir. 2010) (citing *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc)). If "a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016) (citing *Adkins*, 554 F.3d at 651). To succeed on a Rule 37 motion based on spoliation:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > > (A) presume that the lost information was unfavorable to the party;
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). As to subsection (e)(1), "[a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Courser alleges that someone or something did the following to his computer when the House implemented a "litigation hold" before the Select Committee hearing: (1) modified files, (2) deleted a messaging program, (3) overwrote files and "bleached" the computer, and (4) locked the computer with BitLocker. (R. 61, PID 2621–22.) But even though the district court emphasized that Courser "does not even attempt to explain what information was deleted that may have been useful to him," (R. 67, PID 2804), he still has not even tried on appeal to explain how the deleted messages or modified/deleted/inaccessible files would have helped him here. Nor does he refer to what messages or files he needed from his computer. This leads us to assume that the information was unimportant. Courser has failed to prove prejudice, so the district court did not abuse its discretion in denying the Rule 37 motion.

As for (e)(2), after the 2015 amendment, Courser had to show that the Defendants "had 'intent' to deprive [him] of the information's use. A showing of negligence or even gross negligence will not do the trick." *Applebaum*, 831 F.3d at 745. The district court concluded that "[n]othing in the record indicates that the House Defendants intended to deprive Courser of information relating to this litigation." On appeal, Courser still fails to explain to us why the district court was wrong to conclude that and how he has established that the individual Defendants intended to deprive him of any of this information. So we find that the district court did not abuse its discretion in denying the Rule 37 motion.

**III.**

For these many reasons, we largely agree with the district court's conclusions and **AFFIRM**.